Succession of Ames.

<hr/>

### No. 8022.

SUCCESSION OF JOSEPHINE HALE AMES, WIFE OF HUGH O. AMES. ON OPPOSITION TO TABLEAU. H. O. AMES, EXECUTOR, APPELLANT.

- ON MOTION TO DISMISS.

| | |
|---|---|
| 33 | 131? |
| 48 | 511 |
| 48 | 513 |
| 48 | 1040 |
| 49 | 413 |
| 33 | 1317 |
| 51 | 130 |
| 33 | 1317 |
| d115 | 548 |

Differently from an Administrator, a testamentary Executor can appeal officially as Executor, from a judgment rendered against him and in favor of the succession.

### ON THE MERITS.

The Opponents, being both forced heirs and assignees of some particular legatees, have the right to contest all the debts and charges on the Tableau, and are not limited to the contestation of such only as affect their *legitime*.

An Executor is not entitled to favor in the assertion of merely technical pleas tending to exclude from judicial determination questions affecting the lawful distribution of the estate administered by him.

The rule of exclusion of the husband's testimony against his wife, C. C. 2281, applies only during the existence of the marriage. This question is settled by previous decisions.

The husband cannot claim from the estate of his deceased wife, payment of a contract formed between her and him during marriage.

Succession of Ames.

Demand of delivery or payment of a special legacy, to entitle the legacy to interest, is expressly dispensed with when the legatee is himself the Executor. C. C. 1628-30.

The husband is not entitled against his deceased wife's estate to remuneration for services rendered to her during marriage.

A disguised donation from the wife to the husband, is not reducible to the disposable portion, but is absolutely null and void.

A PPEAL from the Civil District Court for the parish of Orleans. *Tissot*, J.

### ON MOTION TO DISMISS.

#### *Hudson & Fearn* for the Appellees:

It is only where a judgment is rendered by which a succession can be aggrieved, that a succession representative can, in his official capacity, appeal from the same.

Where the judgment disallows a claim placed on the tableau as due to the executor personally, he should appeal in his personal capacity and, failing to do so, the costs of appeal taken by him in his official capacity should not be paid by the succession.

Creditors, whose claims have been disallowed, cannot make themselves parties to the appeal without taking an appeal in their own names and giving bond.

#### *D. C. & L. L. Labatt* for the Appellant:

First—"The right of appeal is constitutional and will not be dismissed unless appellees are clearly entitled to dismissal."

Second—The authorities in relation to the right of appeal by syndics and administrators do not apply to testamentary executors, because the latter represent the will of the testator and are bound faithfully to carry out his desires, while the former are mere stakeholders and have no interest to disturb the order of payment made by the court; parties aggrieved have their right of appeal individually.

Third—The will of a testator is the law to govern a testamentary executor, and the succession is aggrieved by a decision which in effect annuls a provision of the will and diverts a part of the estate to a different party from those named by the testator, and deprives the executor of the power of executing it as therein directed.

Fourth—All parties interested, if not appellants are appellees, when by motion and bond filed the court grants the appeal.

### ON THE MERITS.

#### *Hudson & Fearn* for Opponents and Appellees:

When parties who are forced heirs, and also the transferees of the residuary legatees, describe themselves individually by name, and as forced heirs, in an opposition to the executor's account, praying for all "general and equitable relief," and evidence is received without objection, to show their character as transferees of the residuary legatees, the law, pleadings and proof justify a judgment in accordance therewith, dismissing an exception to their want of capacity. 14 An. 864.

Such a judgment dismissing the exception is fully sustained, when the evidence received without objection shows that the exceptor had full knowledge, personally and by participation in judicial proceedings of record, of the possession of the two capacities by the opponents, and had dealt with them judicially as such. For the object of pleading is notice, to prevent surprise, and to enable the party to meet the issue tendered. C. M. 650; 4 N. S. 280; 7 N. S. 354; 17 L. 238; 5 An. 531, 673; 23 An. 676.

The executor, when he presents his account and tableau, is simply a plaintiff against all the world having an interest to oppose it. Opponents are defendants, and their oppositions are in the nature of answers, requiring no special allegations to authorize the introduction of evidence tending to disprove the correctness of the account. 28 An. 607; 29 An. 521; 30 An. 270; 10 An. 80.

Forced heirs, as such, have an interest to oppose all debts placed on the tableau, when not due or prescribed ; for all such debts tend to diminish their *legitime*, which is measured,

not to the entire estate without reference to its debts, but to a *quantum* fixed after deducting all the debts. 28 An. 607; 32 An. 303, State ex rel. Ames, Executor, vs. Judge of Second District Court.

Residuary legatees, or their transferees, have also an interest to oppose debts placed on the tableau, when not due or prescribed; for all such pretended debts directly tend to diminish the *residuum* of the estate coming to them under the will.

When the evidence shows that a claim in favor of the executor, individually, rests exclusively on his testimony to show a contract between his deceased wife, the testatrix, to pay him for services to another, the claim must be rejected, because of the incapacity of husband and wife to make such a contract, and also, because the promise to pay the debt of another must be in writing. C. C. article 2278, No. 3; C. C. 2446; 2 An. 484; 1 R. 219; 6 L. 349; 6 R. 276; 1 An. 303; 4 An. 71.

A wife, having children by a former marriage, who contracts a second marriage, is incapable, in law, of giving by testament to her husband, more, in any case, than the usufruct of one-fifth of her estate. Any disguised donation made to the husband of property in full ownership is absolutely and radically null and void. C. C. articles 1752, 1754; 2 An. 42; 15 An. 287.

Such disguised donations, being fraud on the law and contrary to public order and morals, is so absolutely null, that it will be treated as *non scriptum*; and the nullity of the donation may be invoked both by forced heirs and any other parties in interest, as the residuary legatees or their transferees. C. C. article 1519; 15 An. 600; 16 An. 245.

### D. C. & L. L. Labatt for the Executor, Appellant:

First—An opposition by forced heirs is not the proper form of proceeding to assail the administration of their ancestor's succession. It can only be done where injury is alleged and proven, and by petition and citation in a direct action.

Second—Parties appearing as litigants, asserting rights flowing from a capacity disclosed under special allegations, and with a prayer for general relief, cannot be relieved from laches or neglect, in failing to set up other rights not disclosed, so as to evade the consequences of a final homologation of an account never opposed by and binding upon them, as to those rights.

Third—Where the machinery for asserting legal rights are disregarded, and parties mistake the remedies to which they are entitled and are concluded by solemn adjudication of a competent court, they cannot, in another form, require the courts to relieve them from the consequences of their own errors or mistakes.

Fourth—A remunerative donation by one of the spouses in the last will, the payment of which is taken out of the disposable portion, is not within the prohibition against giving or bequeathing more than a usufruct of one-fifth to the surviving spouse. See 2 Rob., p. —.

Forced heirs are nothing more than creditors of their ancestors' succession, and if there is ample to pay them, are without legal interest to maintain a suit to annul, or to oppose an account or final tableau. Rachel vs. Rachel, 4th An. 501; 8 An. 21.

The acquisition by forced heirs of the title of residuary legatees to the residuum, after full administration, confers no greater or other rights than those from whom they acquired.

The prayer for general relief, applicable to particular pleadings, as forced heirs, cannot be interpreted to permit the presentation of other rights, derived from other parties, so as to open a final judgment of homologation and evade the consequences of the law as to such transferrors. 4 An. 216.

---

## ON MOTION TO DISMISS.

The opinion of the Court was delivered by

BERMUDEZ, C. J.   A motion to dismiss the appeal taken by the executor of the deceased, is made by her forced heirs, on the ground:

"that the judgment appealed from is one in favor of the succession, which is benefited and not aggrieved thereby, and that said executor cannot be permitted to use his official capacity for his individual advantage when he only is the one aggrieved by the judgment."

The executor claims that the judgment affects not only himself, but also three other parties, a creditor and two legatèes, and insists that he has a right to appeal from the judgment, both as concerns himself and those parties, in his official capacity and for their common good.

The authorities relied upon by the movers, 19 L. 278, 11 An. 177, 12 An. 774, 32 An. 889, can receive no application in the case before us. It is evident from the very terms of the motion to dismiss, that it is based mainly on the case in 32d A. R., in which the language used by the movers was employed by the Court.

The duties and rights of *executors* are in this respect different from those of *administrators* of successions.

The appointment of an executor by a testator is a mandate, anomalous in this, that it *begins* when other mandates, intended to be exercised at a different time, *terminate;* i. e., at the death of the principal. Marcadé; vol. 3, p. 104; Art. C. N. 1025. When it is accepted, it is a contract binding on the conscience of the executor, the effect of which he is not lightly to disregard. Mourlon, vol. 2, p. 444 (5); Art. 1034, C. N; Coin Delisle, p. 487, No. 11. By such an appointment, the testator constitutes the executor a *mediator* between the various parties who may have an interest in his succession, whether under the will, or under the law. Duranton, No. 390. The instructions of the principal to his agent in such a case are peremptory, when their execution infringes no prohibitory law. They generally are : You shall pay my debts, as well those existing *before,* as those arising *after,* my death. You shall next pay or satisfy my special legatees, and, otherwise, carry out my intentions. You shall next and last, deliver the residue of my estate to such person or persons as it accrues to, under my will, or under the law, or both.

The executor who has the seisin, represents the active and passive mass of the succession, all the assets, all the liabilities, the entire residue. Where he happens to be a creditor, a legatee, he represents himself as such, *officially,* as effectually as he is authorized to represent others similarly situated. His trust of executor, of confidential agent and mandatory, charged with the execution of the sacred behests of the departed one, and to be held as *such* as long as they contravene no prohibitory law,—derives from the testator and not from the law, and cannot place him in *duriori casu.* He cannot be required to distinguish himself, as a creditor, as a legatee, from himself, as an executor, 3 An. 174, representing as he does all the creditors, all the legatees, and eventually the heirs, be they legal or testamentary. Coin Delisle D. & T.

p. 486, No. 3; Merlin Rep. Vo. Ex. Test. No. 2; Grenier, No. 327; Toullier, No. 577; Duranton, No. 390, 392; Dalloz, ch. 8, Sec. 1, No. 1; Ricard, part 2, No. 66; Pothier, Disp. Test. Art. 2, ch. 5, p. 360; Furgole, Nos. 20, 21, 23; C. N. 1025; R. C. C. 1658, 1659, 1660, 1661, 1672; C. P. 123; 3 An. 172; 10 R. 194; 1 An. 92; 4 An. 571; 7 L. 389; 26 An. 312; 23 An. 369; 12 An. 611.

It is a *personal* mandate, intransmissible in principle, but which, under special legislation in this State, can be, in certain cases, provisionally delegated. R. S. 2349. The powers which are conferred upon him, even where the heirs have taken away from him the seisin of the estate, by furnishing him funds to pay the debts and legacies, continue and last during all the time which is necessary to ¦wind up the estate and to execute the will of the deceased, which is to him, *the law. Dicat testator et erit lex.* C. P. 123 ; R. C. C. 1658, 1676, 1680, 1673; C. N. 1051 ; R. S. 1471.

He gives no security, but can be required to do so, not only by the creditors of the deceased, or of his succession, by persons claiming property in kind, found among the assets of the succession, but also by the forced heirs of the deceased, when their legitime may be affected. R. C. C. 1677, 1673; Succession Turnell, and authorities there cited. 32 An. 1218.

The functions of administrators are not at all of the same origin and of the same duration as those of executors. They are conferred by law and are restricted to a liquidation of the estate, and to the application of its funds to the payment of its creditors. That result once accomplished, their duties are at an end; they turn over to the heirs of the deceased what may remain in their hands, after payment of the liabilities. They do not represent the *mass* of the succession; they have no mandate of the deceased to execute. Where they are individually concerned as creditors, and their claims are not admitted, the authorities are that, if they appeal, they must do so in their individual capacity. This case in the 32d An. p. 889, was one of that description. Code Practice 123.

Upon a motion to dismiss, which involves the *right* of an executor to appeal from a judgment which modifies an account of his administration, we cannot be expected, particularly in a case the transcript of which contains no less than 823 pages, to go behind the motion of appeal and inquire into the correctness of the judgment complained of, in order to ascertain the effect of such an appeal. It may, however, happen that, on the trial of the case on its merits, if we find that the executor should not have been permitted to appeal as he has done, we may summarily dispose of the case. As at present advised, and in a succession in which the assets have been appraised at more than $150,000, we do

not feel authorized to dismiss the appeal. 26 An. 312; 1 An. 414; 2 An. 387; 4 An. 534.

It is, therefore, ordered that the motion to dismiss herein be accordingly overruled.

## ON THE MERITS.

The opinion of the Court was delivered by

FENNER, J. The will of Mrs. Josephine Hale Ames contained the following provisions:

" My name is Josephine Hale Ames, widow by first marriage of the late Thomas Hale, and now the wife of Hugh O. Ames.

" I am aged fifty-two years and have four children, issue of my first marriage; the eldest is named Mary Hale Porteous; Anais Amelia Hale; the third is a boy, called Edward John Hale, and the fourth is Patrick Julian Hale.

" There is no children by my marriage with Mr. Ames.

" I own property and effects in no other places than in New Orleans, Louisiana, and at Bay St. Louis, Mississippi.

" I owe to Judge Sones and his wife a note given to them in December, eighteen hundred and seventy-one, for two thousand dollars, reduced to nineteen hundred dollars.

" I owe to my husband, Hugh O. Ames, ten per cent on my share of all the collections which he has made for account of the property and succession of Thomas Hale, from the first day of October, eighteen hundred and sixty-nine, until the date of settlement, or his relinquishment of the collection thereof; and I make him executor of my estate, without security and with seizin, or full charge of the property and effects belonging to my estate, wishing and desiring that he should receive full compensation for his services as such executor.

" I wish to give and bequeath unto my husband the sum of one thousand dollars as a special legacy, outside of, and independent of, his commissions as executor, or of any other indebtedness due to him.

" I wish to give and do bequeath to my brother, Edward Jones, a resident of the city of New York, a legacy of one thousand dollars, to be paid out of the third or disposable quantum of my estate.

" I wish and bequeath to my two sisters, Marie Antoinette Morrow, and Mrs. Anais O'Hara, of Cincinnati, the piece of property and improvements, at the corner of Dauphine and St. Peter streets, acquired by me from my mother's succession.

\*    \*    \*    \*    \*    \*    \*.    \*    \*    \*

" I give and bequeath the large silver pitcher which I received from the " orphans' fair," a pair of large solitaire diamond earrings, a solitaire diamond ring, and a cluster diamond brooch to my daughter Anais Amelia.

" The silverware which I had in my charge, of my two sisters, and two pair of diamond earrings, and two brooches (small) also their property, I wish returned to them.

" The donations of one thousand dollars each, to my husband and Mr. Sones, and of the property to my sisters or their heirs, is to be computed as part of the disposable portion of my estate. And all the rest or residue of the disposable portion, or third of my estate I am allowed to dispose of, I give and bequeath in equal portions to my two sisters, Marie Antoinette Morrow, and Anais O'Hara; and if I should outlive either or both of them, then and in that case, I give the share herein donated to each, to the children of the said Mrs. Morrow and O'Hara, so that the children of Mrs. Morrow will have her half or share, and the children of Mrs. O'Hara will have her half or share.

" The other two-thirds of my estate, by the laws of this State, belongs to my four children.

" I revoke all other wills I may heretofore made or codicils of wills."

H. O. Ames qualified as executor, and in that capacity administered the estate.

On the 8th of July, 1879, the executor filed his " third provisional account." This account comprises (1st), a detailed statement of his receipts and expenditures on account of the succession, and (2d), a " list of the debts due by the succession of Mrs. Josephine H. Ames, unpaid." Under this last heading were placed the following items:

" No. 10. D. C. Labatt:

    1876. For commission in going security to January 29, stay execution on judgment in favor of Slidell, in suit No. 4335, in S. C. of La. vs. Est. Thomas Hale, in order to appeal to S. C. of U. S.

.Amount of $5000 do. same in suit No. 4336, in S. C. of La.. same parties on similar appeal to S. C. of U. S., amount.... $5,000 00

    a 2½ per cent. on $10,000 with interest at 5 per cent. from February 7, 1877, until paid................................. 250 00

" No. 11. B. Sones:

    Balance of note, according to provisions of will probated, with interest after December 12, 1879, at 8 per cent........ 1,800 00

" No. 12. H. O. Ames:

    Legacy, according to provisions of will probated, with interest at 5 per cent. from February 7, 1877, until paid............ 1,000 00

" No. 13. Edward Jones:

    Legacy, according to provisions of will probated, with interest at 5 per cent. from February 7, 1877, until paid,

    Transferred to Morgan L. Smith........................ 1,000. 00

        Forward.................................,............. $12,329 85

" No. 14.  H. O. Ames:

For ten per cent. on her share of the collections from community property in succession.  Thomas Hale from October 1, '69, to February 7, according to provisions of will probated—

| | | | |
|---|---|---|---:|
| 1st account filed | | | $27,273 89 |
| 2d | " | " | 59,650 82 |
| 3d | " | " | 27,779 32 |
| 4th | " | " | 33,832 05 |
| 5th | " | " | 33,377 54 |
| 6th | " | " | 8,896 86 |
| 7th | " | " | 9,957 60 |

$200,768 08

½ thereof.................................$100,384 04

a 10 per cent............. ..............            10,038 40

" No. 15.  H. O. Ames:

For commissions on going security to stay execution on judgment favor Slidell heirs in suit No. 4335 in S. C. of La. vs. Ex. of Thos. Hale, in order to appeal to S. C. of U. S., amount $27,000.  Do. same in No. 4336 in S. C. of La., same parties on similar appeal to S. C. of U. S., amount $20,000.

2½ per cent. on $47,000, with interest at 5 per cent. from February 7, 1877, until paid.........................            1,175 08

The children by first marriage, and forced heirs of Mrs. Ames, filed their oppositions to items Nos. 10, 12, 14 and 15 of the account.

Prior to the filing of the account, these children had acquired, and had become the undisputed transferees of, the entire interests of the residuary legatees under the will ; so that, at the time of filing their opposition they combined, in their own persons, the qualities *both* of forced heirs and of residuary legatees.  This transfer was fully known to the executor, and, indeed, appeared on the record in prior proceedings had in the succession contradictorily with the executor.  Their opposition, however, begins as follows: . " The petition of opposition of Mrs. Mary Hale Porteous, of Miss Anais A. Hale, Edward J. Hale and Patrick J. Hale, *all of the city of New Orleans, and forced heirs of their late mother*, Josephine H. Ames, respectfully shows," etc., proceeding to oppose items Nos. 10, 14 and 15, as " not due in whole or in part," and item No. 12, as far as it allows interest on the legacy.

To this petition the executor filed an exception that it disclosed no cause of action, for the reasons (in substance) : 1st, that opponents,

appearing only as forced heirs, are without interest to complain of the proposed payment of debts, legacies and expenses, because, over and above the same, there is ample property in the succession to satisfy their *légitime;* 2d, that forced heirs can only complain of donations or legacies, or expenses and costs of administration, when the same exceed the disposable portion, and then only on proof of such excess, and by direct action.

This exception was overruled in the lower court, the oppositions were tried and sustained, and from the judgment the executor has appealed.

## On the Exception.

Considering that the terms of their opposition do not expressly confine opponents to their quality as forced heirs exclusively, but that they describe themselves both as individuals " *and* forced heirs ;" considering that in their said opposition they assert, not only objections to the account which concerned them as forced heirs, but also some objections which would be appropriate only to their capacity as tranferees of the residuary legatees ; considering that the executor's full knowledge of their double capacities prevented all danger of surprise to him from any vagueness in the pleadings ; considering that the executor, in presenting his tableau and seeking its homologation, stands as plaintiff against all the world having an interest to oppose it, that the burden of proof is upon him to establish its correctness, and that opponents stand as defendants and their oppositions as answers.  28 An. 607 ; 29 An. 521 ; 30 An. 270.  Considering that, under such answers, they had the right to prove their interest in defending, if denied ; considering that, on trial of the exception, it was fully proved that opponents were interested both as forced heirs and as transferees of the residuary legatees, and also that the exceptor was fully advised thereof before oppositions were filed, we are of opinion that the judge did not err in overruling the exception.

We have less hesitation in announcing this conclusion, in the present case, because the exception was interposed by the executor alone and exclusively in his capacity as such.  He is not entitled to favor in the assertion of merely technical pleas tending to exclude from judicial termination questions affecting the lawful distribution of the estate administered by him.

We may add, moreover, that even if we were to hold opponents exclusively to their capacity as forced heirs, no purpose favorable to the desires of appellant would be thereby accomplished.  Conceding, *argumenti gratiâ,* that forced heirs, as such, have no interest or consequent right to contest legacies or expenses and costs of administration, when the same do not trench upon their *légitime,* yet it is elementary that

debts due by the deceased at the moment of death are to be deducted from the mass of the succession, and that the proportion due the forced heirs is to be calculated only on the residuum left after such deduction. It follows, therefore, that, in the settlement of successions in which they are concerned, forced heirs have a vital interest in resisting the allowance of debts of the character above stated, unless the same are legally due and owing. Their right to oppose accounts of executors and administrators admitting such debts and seeking judicial sanction thereof, is one commonly exercised and never questioned by any authority brought to our notice.

So far, then, as items 10 and 15 are concerned, they are, if due at all, unquestionably debts due at the death of Mrs. Ames, and, therefore, fully open to opposition by the forced heirs. Nor is the case altered by the proposal of the executor, in a scheme for final distribution presented by him as a witness on the trial of the case, to pay these debts out of the disposable portion. It is the law, and not the mere will or wish of the executor, which fixes the fund out of which debts are to be paid ; and the law directs that *such* debts, if allowed, shall be paid out of the mass of the succession.

So with regard to item 14, we consider the issue tendered by the account on its face, is whether it is a *valid debt* due by Mrs. Ames. By reference to the extract from the account presented above, it will be seen (1st.) that "the list of debts" included debts and legacies indiscriminately; and (2d ) that while items Nos. 12 and 13, are distinctly placed on the tableau as " legacies " under the will, items Nos. 11 and 14, which are equally referred to in the will as *debts*, are not classed on the tableau as *legacies*, but are both set out as sums due, for considerations stated, " according to the provisions of the will probated," those provisions distinctly declaring that the testatrix *owed* the sums set down to the parties mentioned.

The effect of the homologation of the tableau would, therefore, have been the judicial recognition of these claims as debts due by the decedent, and to be paid out of the mass of the succession. The forced heirs, then, even if confined in their opposition to their rights as such, would have had an evident interest to oppose; and, in that case, the only question presented would have been debt *vel non*. If held not to be a *debt,* item 14 must have been stricken from the tableau. This would not have prevented the executor, however, from placing it on a new tableau as a *legacy* or *donation,* if he had so chosen. In that case, however, the residuary legatees (or their transferees) would have had the undoubted right to contest the same. Their failure to oppose the claim when placed on the tableau as a *debt,* and as such payable out of the mass of the estate, could not preclude them from opposing it when

sought to be allowed as a donation payable exclusively out of the *residuum* coming to them.

Hence, we say that, even if the exception had been so far maintained as to confine opponents to their capacity as forced heirs, it would have proved of no ultimate advantage to any party in interest, except possibly in regard to the insignificant item No. 12.

Holding the exception, however, to have been properly overruled *in toto*, and thus admitting opponents' right to urge their opposition in both capacities, we find the issue so enlarged by the pleadings, evidence and argument, as to present all questions involved and argued in the case in proper shape for final determination; and we shall now consider them *seriatim*.

### Item No. 10.

We think the judge erred in rejecting this item. It rests upon the testimony of Mr. Ames, the surviving husband; and it is objected that he is an incompetent witness under C. C. 2281, providing that " the husband cannot be a witness for or against his wife, nor the wife for or against her husband." The objection is untenable. We consider it settled, that the rule of exclusion prescribed in this article, applies only during the pendency of the marriage, and ceases, as against the survivor, after the dissolution of the marriage by the death of one of the spouses. Succession of Reilly, 28 An. 669; Lehman vs. Levi, 30 An. 749; State vs. Ryan, *id*. 1176.

Mrs. Hale's agreement to pay, individually, the commission charged is sufficiently proved. Her personal interest in the succession of Thomas Hale, for which the security was given, was a sufficient consideration to support her personal obligation, and the service rendered in becoming security, was one for which compensation might be lawfully stipulated.

### Item 15.

The charge, however, by Mr. Ames for his own service in becoming security on appeal bonds for the succession of Thomas Hale, cannot be sustained, for two reasons, viz.: (1st.) The claim, exceeding $500, is not sufficiently proved by his own uncorroborated testimony under C. C. 2277, and we find no corroborative circumstances whatever; (2d.) the claim can only be supported on the basis of a contract for its payment between him and his wife, and such contract falls within none of the exceptions to the general rule of law rendering husband and wife incapable of contracting with each other.

The judge *a quo*, in his reasons for judgment, distinctly disallowed this item, but, by evident clerical error, his direction to that effect was not carried out in the judgment as written up and signed. Under the prayer for amendment of appellees, we must amend the judgment accordingly.

### Item No. 12.

The opposition to this item is confined to the allowance of interest on this particular legacy from the probate of the will. It is unquestionably the general rule that particular legatees are only entitled to interest from the date of·demand of delivery of the legacies. C. C. 1626. But the necessity of this demand is expressly dispensed with when the testamentary executor, having seizin, is himself the particular legatee. C. C. 1628–30. Such is the exact case here.

How, and why, should he make demand upon himself?

The cases referred to in the opinion of the judge *a quo* (13 An. 88, 28 An. 603, 24 An. 125) are all cases where the particular legatees were distinct persons irom the testamentary executor with seizin. They do not, therefore, apply to the instant case, which falls under the authority of Succession of Boone, 7 An. 127.

### Item 14.

This important item is based upon the declaration contained in the will of Mrs. Ames heretofore quoted, viz: "I *owe* to my husband ten *per cent* on my share of all the collections which he has made for account of the property and succession of Thomas Hale," etc.

Much reflection has failed to indicate to us any category of valid claims against the succession in which this item could be placed except that of a debt due by the deceased or a donation *mortis causâ.*

The intention of the testatrix appears, conclusively, from the face of the will, to have been the acknowledgment of a debt due by her, to be paid, as a debt, out of the mass of her estate, as shown by the following circumstances:

1st. Such is the plain import of the language used, "I owe," etc.

2d. The same language is used with reference to the note due to Judge Sones and wife, indicating that she regarded the two dispositions as standing on the same basis.

3d. In the succeeding clauses she makes two money bequests, one to her husband and the other to her brother, using therein the usual dispositive terms "give and bequeath," showing the distinction to be present in her mind between *debts* and *donations.*

4th. She directs the "donations of $1000 each" to her husband and brother, "to be computed as part of the disposable portion" of her estate—suggesting the inevitable inference that she did not intend the *debts* acknowledged in favor of Judge Sones and her husband to be so paid, but expected them to be paid, *as debts*, according to law, out of the mass of her estate.

5th. After directing, as above, the donations mentioned and certain others to be paid out of the disposable portion, she proceeds to "give

and bequeath" "*all* the rest or residue of the disposable portion or third of the estate I am allowed to dispose of," to her sisters.

In view of these provisions, it is difficult to discover any principle of testamentary interpretation, which would justify the executor or the Court in allowing this charge, under any circumstances, otherwise than as a debt due by the testatrix, and payable out of the mass of her succession.

Thus allowed and thus ordered to be paid, it is manifest that it would trench upon the *légitime* of the forced heirs, which is carved, in proportions fixed by law, not out of the entire mass of succession property, but out of the *residuum* thereof left after payment of the debts of the deceased. The rights of forced heirs, as such, result from the law, and are independent of the will of the deceased, who was powerless to diminish or affect them by any testamentary disposition whatever. Her acknowledgment of this sum as a debt, and her implied direction that it should be paid as such, not out of her disposable portion, the whole of which she expressly disposes of otherwise, but out of the only other possible source, the mass of estate, are in no manner conclusive upon the forced heirs, who have the absolute right to test the genuineness and validity of the debt so acknowledged, before permitting their *légitime* to be diminished by the allowance thereof. It is only actual, legal debts which can be charged upon the mass of the estate to the prejudice of the forced heirs. If a testatrix, besides disposing of the whole disposable portion, could create other recipients of her bounty by simply writing in her will, the words "I owe," instead of "I give," and could thus fasten them as creditors upon the mass, the rights of forced heirs would be deprived of the protection which the law assures them.

The question of debt *vel non*, as to this item, is, therefore, properly raised by the forced heirs, and must be determined independently of the testamentary acknowledgment, which could not make that a debt, which, in law, was not such.

The solution of this question is free from difficulty. It is clear, upon elementary principles, that in the relation of husband and wife subsisting between them, the services of Mr. Ames referred to in the will could not, either by contract or by the operation of law, be the source of any civil obligation on the part of his wife to him. R. C. C. 1760, 1790; 6 La. 349; 1 Rob. 218, 220; 6 Rob. 276; 1 An. 302; 2 An. 483; 4 An. 65.

See, also, Williams vs. Hardy, 15 An. 286, where it is held, that after marriage, services, however meritorious, of one spouse to the other, can give no claim against the latter.

Under the construction of the will which we have suggested to be the proper one, we might rest our decision on this point alone.

84

But, supposing that we erred in this construction and that the provision might be considered in the light of a donation, and, if maintained as such, might be held payable out of the disposable portion, articles 1752 and 1754, Rev. C. C., oppose equally insuperable obstacles to the husband's claim. They provide (article 1752), that "a man or woman, who contracts a subsequent marriage, having children by a former one, can give to his wife, or she to her husband, only the least child's portion, and that only as a usufruct; and, in no case, shall the portion of which the donee is to have the usufruct, exceed the fifth part of the donee's estate;" and (Art. 1754) " husbands and wives cannot give to each other, indirectly, beyond what is permitted by the foregoing articles. All *donations disguised*, or made to persons interposed, shall be *null and void.*"

These articles, after learned controversy, have been held to apply to testamentary dispositions as well as to donations *inter vivos*. Depas vs. Riez, 2 An. 30.

If this claim be not a debt, as we think we have conclusively shown, it can be nothing else than a donation. As such, it falls distinctly within the prohibitions of the articles of the Code which we have quoted. The attempt to class it as a remunerative donation cannot have any effect upon the question. The law makes no distinction between different kinds of donations, but embraces, in its prohibition, all donations alike. Where the services remunerated were of a character which might have been the subject of a lawful contract or of a legal claim founded on a *quantum meruit*, and where the party in whose favor the remuneration is awarded, might lawfully have been made the legatee of the entire disposable portion, such remunerative donations have received the following construction by the courts, viz: If the remuneration did not exceed the value of the services, the donation has been maintained, as a *dation en paiement* of a debt, even though it exceeded the disposable portion; if the remuneration was within the disposable quantum the donation has been maintained, even though it exceeded the value of the services; if it exceeded both the value of the services and the disposable quantum, it would be reduced to the value of the services, if that exceeded the disposable quantum, or to the disposable quantum if that exceeded the value of the services. In more general terms, the doctrine is that, to the extent of the value of the services, the donation is treated as a *dation en paiement* of the debt due for such services; and, as to any excess over the value, it is treated as a donation for which the services are merely regarded as the motive.

Such is the purport of the various cases quoted and relied on by appellant. 2 Rob. 292; 4 Rob. 397; 10 An. 212; 13 An. 87; 8 An. 262; 25 An. 371.

Succession of Ames.

Manifestly, these authorities have no application to a case, like the instant one, where the relation between the parties was such as to render them legally incapable either to contract a debt, or to make the donation to each other. Husbands and wives render to each other, necessarily, many services equally worthy of remuneration with those presented here. If the spouse, having children by a former marriage, might confer bounty upon the second spouse, by simply acknowledging in the will a debt for such services, by simply, as heretofore said, substituting the words, " I owe," for the words, " I give," it is manifest the prohibition contained in Art. 1752, would be completely defeated. For these reasons, we .are of opinion that, even if the provision under discussion could be treated as a donation, it could not, as such, be maintained.

It is urged, however, that, as a donation, it would not be null, but only reducible to the usufruct of one-fifth of the estate, which the law permits to be given to the second spouse. Such is not the case. If a donation at all, it is unquestionably a *disguised donation*. It does not, by its terms purport to be a donation, but is disguised in the form of an acknowledged debt. Being a disguised donation, it is not merely reducible, but is struck with absolute nullity by the express terms of Art. 1754, which declares that "all (such) donations disguised, or made to persons interposed, shall be *null and void.*"

If this were held to mean that they were reducible merely, the clause would be without any effect. Every donation exceeding the amounts permitted by law is necessarily reducible, and it would be useless separately to predicate that fact of a disguised donation. The law makes a distinction between avowed and disguised donations, and, while the former are reducible merely, it declares that the latter are null and void. The motive of the legislator is apparent—to prevent by such severe penalty all attempts to evade, or perpetrate frauds upon, the law. The point, however, has already been expressly decided by this Court. Thibodeaux vs. Herpin, 6 An. 673; Casanova vs. Acosta, 1 La. 179. The same doctrine existed in the Roman law and is maintained by the French courts and commentators. See commentaries on this article, of Toullier, . Marcadé, Grenier, Troplong, Delvincourt and others.

Difficult questions which might arise as to whether this nullity is available to any but the children of the first marriage, and as to whether, in a case like the one at bar, the nullity would enure to the benefit of those children or of the universal legatees, are shut out in this case by the confusion of the qualities of the children and the legatees in the same persons.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be reversed so far as the same sustains the oppositions

to items Nos. 10 and 12 of the executor's account, and that as to said items the oppositions be rejected and overruled; that it be amended so as to sustain the opposition to item No. 15 of said account; and that, in other respects, it be affirmed; costs in both courts to be paid by the succession.

Rehearing refused.