## Succession of HUNZELMAN. *
### No. 15056.

Court of Appeal of Louisiana. Orleans.
Feb. 18, 1935.

---

*Rehearing denied March 18, 1935.

See, also, 157 So. 118.

Benjamin Y. Wolf, of New Orleans, for appellant.

Spearing & McClendon, of New Orleans, for appellee.

WESTERFIELD, Judge.

Miss Tillie Hunzelman, a resident of the city of New Orleans, died in this city on November 21, 1933. She left a last will and testament in which, among other dispositions, she bequeathed to Louise Lederle Miller, of Memphis, Tenn., and to Frau Dina Justus, of Mainz, Weiseman, Germany, five and three shares, respectively, of the paid-up capital stock of the Audubon Homestead Association. She appointed Miss Gertrude Ellis her testamentary executrix. The succession was duly administered and a final account filed, which, after a trifling amendment, was homologated. The account, after reciting the various legacies, including the two we have mentioned, contained the following declaration:

"Upon approval and homologation of this account, the Executrix proposes and intends to deliver to each of the legatees hereinabove named the article or articles bequeathed to the several parties as hereinabove named, and one of the purposes of this account is to justify the Executrix in making such deliveries."

Following the judgment of homologation, the executrix caused a rule to show cause to issue directed to the Audubon Homestead Association, wherein it was alleged that the deceased, Miss Tillie Hunzelman, was the owner of eight shares of the capital stock of the Audubon Homestead Association evidenced by six certificates, two of which were for two shares each and four for one share, and that Miss Hunzelman had in her will bequeathed three of these shares to Frau Dina Justus and five to Louise Lederle Miller, and that a formal judgment had been entered on the 24th day of April, 1934, approving and homologating the final account of Miss Ellis, the executrix, and authorizing her to make delivery of the legacies set forth in that account, among

which were those to Frau Dina Justus and Louise Lederle Miller; that a request had been made of the Audubon Homestead Association to transfer the interest of the deceased in the stock of their homestead in the proportion of three shares to Frau Dina Justus and five shares to Louise Lederle Miller; and that the Association had arbitrarily refused to do so, notwithstanding her offer to deliver the six certificates calling for eight shares of stock in the association. The rule concluded with a prayer "that the Audubon Homestead Association do show cause on Friday the 22nd day of June, 1934, at 11 o'clock a. m., why it should not forthwith transfer three (3) shares of the paid up capital stock of said Association to Frau Dina Justus and to issue to her a new certificate in her name for three (3) shares, and why it should not transfer five (5) shares of the paid up capital stock of said Association to Louise Lederle Miller and to issue to her a new certificate for said five (5) shares in her name upon the surrender by the Executrix of this Succession of the certificates of stock in the name of Miss Tillie Hunzelman."

The Audubon Homestead Association filed exceptions of no cause or right of action based upon the failure to allege and prove that a certified copy of the judgment recognizing and putting the legatees in possession, as required by Act No. 67 of 1922 and section 77 of Act No. 140 of 1932, had been first tendered the homestead association, together with the certificates of stock signed by the legatees, and upon the further ground that the executrix was without authority, since the transfer of certificates of stock was no part of the administrative functions of an executrix, to act for the heirs in a proceeding contradictorily with the Audubon Homestead Association without special mandate so to do.

The second point, which we shall first consider, addresses itself to the exception of no right of action based upon the want of capacity in the executrix to represent the legatees in this proceeding. We find an excellent description of the duties of an executor in the opinion of Chief Justice Bermudez in Succession of Ames, 33 La. Ann. 1317:

"The appointment of an executor by a testator is a mandate, anomalous in this, that it begins when other mandates, intended to be exercised at a different time, terminate; i. e., at the death of the principal. Marcade, vol. 3, p. 104; Art. C. N. 1025. When it is accepted, it is a contract binding on the conscience of the executor, the effect of which he is not lightly to disregard. Mourlon, vol. 2, p. 444 (5); Art. 1034, C. N.; Coin Delisle, p. 487, No.

398

11. By such an appointment, the testator constitutes the executor a mediator between the various parties who may have an interest in his succession, whether under the will, or under the law. Duranton, No. 390. The instructions of the principal to his agent in such a case are peremptory, when their execution infringes no prohibitory law. They generally are: You shall pay my debts, as well those existing before, as those arising after, my death. You shall next pay or satisfy my special legatees, and, otherwise, carry out my intentions. You shall next and last, deliver the residue of my estate to such person or persons as it accrues to, under my will, or under the law, or both.

"The executor who has the seisin, represents the active and passive mass of the succession, all the assets, all the liabilities, the entire residue. Where he happens to be a creditor, a legatee, he represents himself as such, officially, as effectually as he is authorized to represent others similarly situated. His trust of executor, of confidential agent and mandator, charged with the execution of the sacred behests of the departed one, and to be held as such as long as they contravene no prohibitory law,—derives from the testator and not from the law, and cannot place him in duriori casu. He cannot be required to distinguish himself, as a creditor, as a legatee, from himself, as an executor, Morton v. Packwood, 3 La. Ann. 174, representing as he does all the creditors, all the legatees, and eventually the heirs, be they legal or testamentary. Coin Delisle D. & T. p. 486, No. 3 [authorities].

" * * * The powers which are conferred upon him, even where the heirs have taken away from him the seisin of the estate, by furnishing him funds to pay the debts and legacies, continue and last during all the time which is necessary to wind up the estate and to execute the will of the deceased, which is to him, the law. 'Dicat testator et erit lex.' C. P. 123; R. C. C. 1658, 1676, 1680, 1673; C. N. 1051; R. S. 1471."

■ It is a part of the administrative function of the executor to deliver the special legacies of his deceased principal. Where a legacy consists of corporeal things, which may be transferred by authentic act or manual delivery, its accomplishment is quite simple, but the delivery of an incorporeal right, such as an investment in corporate shares, is another matter. The deceased in this case left an interest in the capital stock of the Audubon Homestead Association which she had devised in the proportion of three-eighths and five-

eighths to two friends. The six certificates which she held, representing the eight shares, had no intrinsic value, but were mere evidences of her investment in the homestead stock. Article 1626, R. C. C. reads as follows:

"Every legacy under a particular title gives to the legatee, from the day of the testator's death, a right to the thing bequeathed, which right may be transmitted to his heirs or assigns; and this takes place as well in testamentary dispositions, universal or under a universal title, as in those made under a particular title.

"Nevertheless, the particular legatee can take possession of the thing bequeathed, or claim the proceeds or interest thereof, only from the day the demand of delivery was formed, according to the order hereinabove established, or from the day on which that delivery was voluntarily granted to him."

Article 1630, R. C. C. reads:

"The delivery of legacies under a particular title must be demanded of the testamentary executor, who has the seizin of the succession. If the testamentary executor has not the seizin, or if his functions have expired, the legatees must apply to the heirs."

■ It seems to us that the executrix in this instance exceeded her authority and went beyond any duty imposed upon her by law in her effort—well intentioned, no doubt—to make delivery of the two legacies under consideration when she attempted to have a transfer made of the interest of the deceased on the books of the homestead association by the cancellation of the six certificates in the name of Miss Tillie Hunzelman and the reissue of two certificates for three and five shares, respectively, in the name of the legatees. The consummation of the testator's intention, as expressed by the legacy, will ultimately have the effect which the executrix sought to accomplish, but the proper procedure should be initiated by the legatees after a judgment placing them in possession of the legacy has been provoked. Of course, what the legatees are bequeathed by the will of Miss Hunzelman are not the certificates of stock, but an aliquot share of the capital stock of the homestead association represented by Miss Hunzelman's investment. The question raised by the homestead association in this proceeding may be said to be highly technical, since it has no interest in the ownership of Miss Hunzelman's share of its capital stock and does not question the validity of the legacy to the individuals which the executor seeks to place in possession of new certificates. Nevertheless, it has an interest in rais-

ing the question of the authority of the executrix, and we are of opinion that the legal objections advanced are well founded and should have been sustained.

For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that the rule herein taken by the executrix, Miss Gertrude Ellis, against the Audubon Homestead Association, be and it is discharged at the cost of appellee.

Reversed.