6   673
48  512

## Aspasia Thibodeaux v. Victor Herpin.

Where testimony.has been rejected upon objections made to its reception in the district court, and, on appeal, the Supreme Court remands the cause,with instructions that the testimony be received; on the second trial of the case in the district court, the party objecting will be considered as having waived all objections which he did not urge at the former trial.

Parol proof may be introduced to show that a notarial act of sale was, in fact, a disguised donation from the wife to her husband, the vendee in the act of sale being a person interposed, and that the whole proceeding was a fraud upon the wife.

By the C. C., art. 1747, excessive donations between husband and wife are reducible; but disguised donations, or those made to persons interposed, are null and void.

APPEAL from the District Court of Lafayette. *Overton, J. Albert Voorhies*, for the plaintiff, contended : The sale, the nullity of which is demanded by this action, should be set aside and avoided, because, in reality, it is a disguised donation to plaintiff's husband, *François Herpin*, by means of an interposed person, the defendant, *Victor Herpin;* because she has never given her consent to an absolute conveyance to the latter, from whom, she never received any consideration whatever, and she was fraudulently induced, by him and her husband, to believe that to effect a valid donation in usufruct for life of property to her husband, the best plan was to convey the property to the defendant by an act of sale, which she did do.

The C. C., art. 1747, prohibits husband and wife from giving to each other, indirectly, beyond what is permitted by the foregoing dispositions, and declares the nullity of all donations, whether disguised or made by persons interposed. By the first part of this article, indirect donations are declared only reducible, whilst disguised donations, and such as are made by interposed persons, are null absolutely. An indirect donation is one which is based upon a real contract, and is a favor conferred to the other contracting party, under color of a real contract for the whole. In such cases, so far as the transaction is real and unfeigned, the same is binding, and whatever is simulated is null. But in disguised donations, the whole transaction is simulated ; there is no real contract ; the whole is therefore null. The French commentators favor this view of art. 1747, C.C., as well as our jurisprudence. 5th Ann., 578.

The question, then, presents itself : Does the case under consideration fall under the provisions of this article ?

*Joseph Béraud*, the principal witness on behalf of plaintiff, gives a clear and concise history of this case. At different intervals, he had conversations with *Victor* and *François*. The latter informed this witness that the sale was a simulation; that there was an understanding between all the parties that *Victor* should re-transfer the property, by private sale, to *François*. Subsequently, *Béraud* had a conversation with *Victor*, who told him the same thing : that he had become the purchaser in order to convey the property to his brother. *Victor* further stated, that the consideration of the sale was not paid with his own funds, and that the amount counted before the notary, belonged to the succession of *V. Thibodeaux*, then administered by *François;* that the amount was temporarily taken from the Branch Bank of the Louisiana State Bank, in Vermillionville, where it was on deposit, counted before the notary, and deposited again in bank.

It is further in evidence, that plaintiff did not part with the property for nearly twelve months after the sale, and that *Victor* took forcible possession of it on the day the inventory was taken of the effects belonging to the succession of *François Herpin*, of which he was administrator.

The conclusion is inevitable : the sale to *Victor* is a simulation; the real nature of the transaction is a disguised donation by the plaintiff to her husband, with the aid of an interposed person.

II. We now come to the question of fraud. From the evidence already reviewed, we establish the fact of the simulation of this sale. It remains now to point out what deceptions were used, the *modus operan*.

THIBODEAUX
v.
HERPIN.

Direct evidence of fraud is seldom in the power of the injured party; for he who commits a fraud, is very careful to leave behind as little evidence as possible. Recourse must then be had to circumstantial evidence and presumptions. C. C., art. —. The case at issue offers evidence of both kinds, and, as the judge *a quo* remarked in his able opinion, presents a case of the most unmitigated fraud. The plaintiff, who is the creditor of her husband in a large amount, as appears from authentic evidence on file, is kept under the delusion that, on the contrary, she is indebted to her husband in the sum of one thousand dollars, for money spent by him to ameliorate her property, and also for his services in managing it. In order to his reimbursement, she consults her friend, *Béraud*, for the purpose of getting his advice upon the proper way to do so. Afterwards, her husband called upon *Béraud* to come and witness the act of sale she was to pass to *Victor;* but, finding that the amount of the sale was a great deal larger than he had expected from conversations with these parties, *Béraud* refuses to act as a witness, and will have nothing to do with the matter. The sale, however, takes place; but on the same day, two other acts are passed, to-wit, an inventory of the property belonging to *François*, made in presence of *Victor*, and a sale from *François* to his wife. Both these documents are in evidence.

*François* sells to his wife, property adjudicated to her by a family meeting in the succession of *E. Mire*, deceased, her former husband. The same property is conveyed to the defendant by the plaintiff, as above said, and is inventoried in the name of *François*, in the presence of *Victor*. During the lifetime of his brother, *Victor* does not claim the property, but on the day the inventory is taken of *François'* succession, he takes forcible possession; not, however, without having tried gentle means, and asked *Béraud* to interfere in this matter for him. But *Béraud* would not consent, reminding him how things stood, and that, considering the circumstances, he could well use lenity towards her.

To recapitulate: The plaintiff has parted with all her property without receiving an equivalent for it, nor even any consideration whatever. The defendant owns the whole of it by means of a sham transaction. From the mouth of the defendant and his brother, the transaction is proved to be simulated, and that the appearance of a sale is given to a disguised donation to the husband, by means of an interposed person. The wife is kept in the delusion that she is her husband's debtor, whilst the reverse is the case. To confer a gift on him, she is advised to adopt the mode of a sale to the defendant. The latter, having accomplished his object, disregards the tacit understanding, and, after suffering the plaintiff to use the property as owner, for a length of time, takes forcible possession of it, and claims it as his own, notwithstanding his declaration that he was but a nominal purchaser, and that he had not paid the price with his own funds.

This sale is, therefore, null and void, both as a transaction *"in fraudem legis,"* and as a contract tainted with fraud.

*C. H. Mouton* appeared on the same side.

*Crow* and *Girard* and *Thomas C. Nichols*, for defendant, contended: The plaintiff offered in evidence the testimony of *Joseph Béraud*, taken by commission, to which the defendant excepted, because the witness does not disclose any facts from his own knowledge, but only what has been told him by the plaintiff herself and her husband, out of the presence of defendant. The plaintiff certainly cannot, by her conversations with a third person out of the presence of defendant, fabricate evidence for herself by calling that third person to testify as to what she told him; nor can the conversations of her husband, under any circumstance, be received in evidence, either for or against her, C. C., art. 2260.

As to that part of *Béraud's* testimony which discloses conversations between him and the defendant, if admitted, ought to be received with great caution; for it is the weakest of all evidence, it being hearsay. *Hendrick's Curator* v. *Man*, 11 L. R., 139; *Clark* v. *Slidell*, 5 R. R., 330.

In one part of his testimony, *Béraud* says that the defendant told him that the money paid before the notary had been procured by *F. Herpin*, who was administrator of the succession of — *Thibodeaux*, in St. Martin, and had the money belonging to it deposited in the Union Bank of Louisiana, at Vermillionville, from whence it was temporarily taken, the money paid, and afterwards returned and deposited in said bank. But *John Greig*, who was at that time cashier of said bank, says that neither of the *Herpin's* received any money from the bank during the month of June, 1848, the sale having been passed on the 15th of that month. So the witness, *Béraud*, must have misunderstood the defendant, or be mistaken.

But supposing the evidence to be admissible, it cannot bo admitted to show any thing but the fraud alleged in the petition; and fraud is not to be presumed, it must be established like any other allegation. C. C., art. 1842. There is nothing in the evidence to show any fraud or collusion between plaintiff's husband and defendant, nor even to show the repeated solicitations on the part of the husband to induce the plaintiff to pass the act of sale to defendant. But, on the contrary, the plaintiff was anxious to sell her property, and did it of her own accord, and freely. It could then, at most, only be a simulated act; but simulation alone cannot be proven by parol evidence between the parties. *Dabadie* v. *Poydras*, 3d Ann. 153; *Gautier* v. *Birault*, 4th Ann. 487; and the authorities cited in those cases. 9 R. R. 379. *Ranaldson* v. *Hamilton*, 5th Ann., 203.

The court below, in its opinion, lays it down as a settled principle, that the provisions of our laws very properly attach to all contracts between individuals, proven by authentic act, the very highest degree of authenticity and credit. It is full proof of the agreement contained in it against the contracting parties, their heirs and assigns, unless declared and proven to be a forgery. But, then adds the court below, it ought to be the truthful depository of the intentions of the parties and the stipulations of their contract." If the authentic act be full proof of what it contains. and there be no evidence of its being a forgery, how can it be any thing but the truthful depository of the intentions of the parties? Even if, in fact, it were not such, the law renders it so by its provisions.

The court below, then, to make out the fraud complained of by the plaintiff, goes on and explains the *modus operandi*, and makes a transfer with subrogation from a third person, *A. Mire*. to defendant, passed on the 22d day of May, 1848, (while the sale was passed 15th June, 1848,) the first and initiatory step towards the act sought to be annulled in this action. The plaintiff owed the amount to *A. Mire*, who transferred her rights to defendant. The court will see that *A. Mire* had brought suit against the plaintiff in this case, her mother, for the amount due her, and plaintiff not being able to pay her, the defendant did so, and was subrogated to all her rights against the present plaintiff. But the court below adds, that the plaintiff in this case was in receipt of large sums of money by inheritance, and that she did not need the assistance of defendant to pay that debt. But while she had inherited $4834 58, which her husband had received for her, *Edourd Mire* had been paid $1235 which she owed him, and large amounts of property had been purchased, said property consisting of slaves and personal property, as may be seen by comparing the inventory of her property at her first husband's death, and amounting to $7189 57, with the inventory, amounting to $12,720 21, made 15th June 1848, when this sale was passed. Moreover, the husband, in his settlement with his wife, and the *dation en payment* to her, charges himself with all he has ever received for her, and pays her.

Finally: the court below observes, that an estimative inventory of the spouses' property, the *dation en payment*, and the sale from plaintiff to defendant, were passed on the same day, and makes it conclusive evidence of fraud The husband, as head of the community, believing himself responsible to his wife for the restitution of all her effects, makes a *dation en payment* to her after having caused the property to be duly inventoried and appraised, (and she does not complain of the appraisment,) and afterwards sells to a third person, with her husband's consent, a part, $4747 of the property, valued in all at $12,720 21. Can such facts be construed into conclusive evidence of fraud?

In conclusion, fraud cannot be presumed, and there is no evidence whatever of fraud, which is the only cause that could annul this act, and the defendant insists upon the reversal of the court below, and the validity of the sale.

*E. Simon* and *J. W. Waker* appeared, also, for the defendant.

The judgment of the court was pronounced by

ROST, J. This case was before us at the last term, and the facts of it are fully stated in the opinion then delivered. 5th Ann. 578. It was remanded on a bill of exceptions, with instructions to the district judge to admit in evidence the deposition of *Joseph Béraud*, attached thereto, which the plaintiff had offered *to prove the fraud alleged, the want of consideration of the contract of sale which she seeks to avoid, and the interposition of the defendant therein for the benefit of his brother.*

On the second trial, this deposition was again offered, and the defendant's counsel objected to its introduction, on the ground that the witness does not disclose

THIBODEAUX
v.
HERPIN.

any facts of his own knowledge, but only what has been told him by the plaintiff and her husband, out of the presence of the defendant; that the plaintiff ought not to be permitted to make evidence for herself; and that her husband's statements to the witness cannot be received for or against her.

This evidence forms part of the "*res gesta*," and is well calculated to raise that class of presumptions which the law deems, in certain cases, sufficient to establish fraud; but independently of these considerations, the deposition of this witness, when offered on the first trial, was objected to by the defendant's counsel on the ground, only, that it was inadmissible to contradict, vary, or add to the act of sale a counter-letter, being the only means by which the act could be impeached. These objections were overruled by us, and the district judge was instructed to admit that deposition in evidence. This decree is binding upon the defendant, who must be considered as having waived all objections to the introduction of the evidence, which he did not then make. That evidence, not being of the class which the law makes it the duty of judges to disregard, we think it was properly admitted.

The district judge deemed this and the other evidence of the plaintiff, sufficient to establish the fraud and interposition alleged, and we see no reason to differ from him; the right of the plaintiff to make that proof against the party to whom she sold, was considered and recognized when the case was before us last year. We are satisfied of the correctness of the opinion then formed.

Art. 1747 of the C. C., is as follows: "Husbands and wives cannot give to each other, indirectly, beyond what is permitted by the foregoing dispositions. All donations disguised, or made to persons interposed, shall be null and void."

As well observed by the plaintiff's counsel, that article contains two separate dispositions: one by which the spouses are incapacitated from giving to each other more than the law permits, in which case the excessive donation is reducible, and the other declaring null and void all donations disguised, or made to persons interposed. This distinction of reducible donations between husband and wife, and donations which are null and void on the ground of interposition or disguised, came to us from the Roman law. See Digest, book 24, title 1, law 5, paragraph 5. Pothier, Donations *entre mari et femme*, No. 78. It was recognized by the late Supreme Court, in the case of *Cásanova's heirs* v. *Acosta et als.* 1 L. R. 185. It is also recognized by the French commentators under a similar disposition of the Code of France. 5 Toullier, No. 76, 83, 901, 902.

The second paragraph of art. 1747, creates an absolute incapacity, between husband and wife, to make to each other disguised donations, or donations to a person interposed; and if they do so, the donation is null and void. This nullity being considered by jurisconsults as absolute, may in all cases be invoked by the contracting parties or their heirs. 7 Toullier, No, 558.

This class of cases are, from necessity, exceptions to the rule invoked by the appellant, that simulation cannot be proved between the parties to it, otherwise than by a counter-letter; when a fraud has been accomplished by simulation, the party injured by it may prove it by all kinds of legal evidence.

It is therefore ordered, that the judgment be affirmed, with costs.