### CAROLINE LAZARE, Wife, &c., *v.* CELISE JACQUES, f. w. c.

| 15 | 599 |
|----|-----|
| 51 | 1364 |
| 15 | 599 |
| 111 | 309 |
| 15 | 599 |
| 114 | 463 |

A natural son is not a competent witness in controversies which relate to the succession of his deceased natural father,

A donation of immovable property made by a man to his concubine, is, under the prohibition contained in Article 1468 C. C. radically null and void, and not susceptible of ratification or confirmation. Such a contract being absolutely null, all parties interested, such as all the heirs of a deceased party who has made such a donation, have a right to set up this nullity for the purpose of defeating the fraud practised upon the law. This right is not confined to the forced heirs only.

In suing for the property illegally donated, the heirs are not required to produce a counter-letter, but are allowed to prove the violation of the law by every species of evidence oral as well as written.

Parol evidence is admissible whenever the obligation is one contracted *in fraudem legis:* it is immaterial what form may have been given to the reprobated contract.

APPEAL from the District Court of the Parish of St. Landry, *Martel*, J. *Swayze & Moore*, for plaintiffs. *John E. King*, for defendant and appellant.

VOORHIES, J. The plaintiffs are the administrator and the collateral heirs of *J. B. Desmarais*, deceased. They sue the defendant for the purpose of annulling an act of sale made to her by the deceased, and base their demand upon the fact that she was at the time his concubine, and that this was a disguised donation.

The facts elicited on the trial of this cause show conclusively that the deed of sale in question was a disguised donation, and that the transfer was made in that form for the purpose of evading the prohibition contained in Article 1468 of the Civil Code.

The only question presented under the evidence is, whether the plaintiffs, who are not forced heirs, have the right to attack this deed, and, if so, whether they should produce a counter-letter.

Before discussing this matter, however, it is necessary to notice a bill of exception taken by the defendant to a ruling of the inferior court. A witness by the name of *Noël Roy* was held to be incompetent, being a natural son of the deceased *Desmarais*. The Code says : " The husband cannot be a witness either

LAZARE
*v.*
JACQUES.

for or against his wife, nor the wife for or against her husband; neither can ascendants with respect to their descendants, nor descendants with respect to their ascendants." C. C. 2260. As the very matter involved in the present controversy relates to the succession of *Desmarais*, deceased, it is evident that *Noël Roy*, his descendant, cannot be heard in the premises.

The position assumed, on the merits, by the defendant's counsel, is, that none but forced heirs can attack a donation made in violation of Article 1468 of the Civil Code; that other legal heirs have no rights but such as are derived from the deceased himself, and that even the forced heirs stand in no better situation beyond their interest in the legitime.

This is not the case of a simulated sale, but of a prohibited donation made under the form and semblance of a real contract of sale. The transaction was a real one, although the contract was purely gratuitous. C. C. 1975; *Johnson* v. *Alden*, ante p. 505. The rules applicable to ordinary cases of simulation do not, therefore, apply.

This contract being derogatory to public order and policy, it is radically null and void, and, as such, is not susceptible of ratification or confirmation. The obligation is an illicit one; it is not reducible or subject to rescission: it is an absolute nullity.

Such being the case, it follows that parties interested —such as the heirs of the deceased,—have a right to set up this nullity for the purpose of defeating the fraud practiced upon the law. To say that forced heirs only, and that to the amount of their legitime, are entitled to invoke this nullity, carries its own refutation. For it is tantamount to saying that the illicit obligation is binding in all cases in which the legitime is not invaded, and that, even when it violates the legitime, it is not null and void, but merely reducible.

If the heirs generally, whether or not forced heirs, have the right to attack such a disposition, when it is made in a last will and testament, it is difficult to see why this right should be limited to the protection of the legitime when the donor resorts to an act *inter vivos*. The prohibition is the same :—" Those who have lived together in open concubinage are respectively incapable of making to each other, whether *inter vivos* or *mortis causa*, any donations of immovables." C. C. 1468. If the donation be set aside,—and, under the law, the whole donation must be declared null,—the property reverts back to the succession, and is transmitted to the legal heir, whether in the direct, or in the collateral line. These have consequently the right to sue for the property illegally donated; and, for that purpose, they are allowed to prove the violation of the law by all species of evidence, oral as well as written. To require of them a counter-letter, is to place the law at the mercy of the law-breaker. The object of the latter being to defeat the prohibition, to the detriment of those who are to inherit from him in due course of law, it is evident that in no case these parties would be enabled to produce a counter-letter; and the prohibition would be a dead letter on the statute book. But it is well settled that parol evidence is admissible whenever the obligation is one contracted *in fraudem legis;* and that it is immaterial what form may have been given to the reprobated contract.

Judgment affirmed.