"have his own way" at, and to "break up, a ball," defendant offered to prove that the deceased said that he was going to do so. Objection was made that, before these threats of the defendant could be admitted, foundation would have to be laid by proof of an actual attempt on the part of deceased to do the acts in question, and the objection was sustained. The ruling was correct. There must be proof of some hostile demonstration before proof of threats can be admitted. This is elementary.

Judgment affirmed.

(35 South. 578.)

No. 14,172.

WESTMORE et al. v. HARZ et al.

(June 16, 1902.)

COMMUNITY PROPERTY—WHAT CONSTITUTES —RECOVERY OF LEGITIME—FORCED HEIRS— CONCUBINAGE—ESTOPPEL—PAROL EVIDENCE —DONATION.

1. Property was bought by the community, the declarations in the deeds of purchase to the contrary notwithstanding.

2. The plaintiffs, son and daughter by a first marriage were entitled to the legitime.

3. In the litigation instituted to recover their legitime and whatever further right they may have, it became evident that the declarations in the deed that the wife had bought the property with her paraphernal funds were not true.

4. The court ordered that the property be returned to the mass, in order that the heirs may recover their legitime, and whatever may remain of the community after the legitime shall have been paid.

5. As relates to the community, the right is not limited to the legitime. Cole v. Cole, 2 South. 794, 39 La. Ann. 878; Spencer v. Louis, 1 South. 671, 39 La. Ann. 316; Moore v. Wartel, 3 South. 384, 39 La. Ann. 1070.

6. Those who have lived together in concubinage have it in their power, by marrying, to do away with the provisions of the article of the Civil Code (article 1481) directed against concubinage.

Nicholls, C. J., and Monroe, J., dissenting.

On Rehearing.

7. Though a husband be estopped from denying that property purchased during his marriage belongs to his wife, when the title is taken in her name, and he declares in the authentic act in which it was purchased that it was bought with her paraphernal funds, his children, being in law his forced heirs, are relieved entirely from the estoppel by the provisions of Act No. 5, p. 12, of 1884, and permitted to show the actual facts of the case by parol evidence.

8. Where the only parties to an act of sale of real property are the vendor and the vendee, the ownership of the property passed to the vendee. The children of a third person cannot, by means of parol evidence, have the property taken from the vendee and vested in their father on the ground that the act evidenced a disguised donation by him to the vendee, as he had furnished her the money with which the property was bought. The donation to her of the money might be subject to attack, but her ownership in the property would stand.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Action by Robert G. Westmore and Cecilia W. King against Louisa Harz, widow of Stephen M. Westmore, and others. Judgment for plaintiffs, and defendant Harz appeals. Affirmed in part.

Horace Edward Upton and John Randolph Upton, for appellant. Farrar, Jonas & Kruttschnitt, for appellees.

BREAUX, J. Plaintiffs, surviving children and sole heirs of their father, Stephen M. Westmore, brought two suits, numbered, respectively, 56,011 and 56,101 of the docket of the district court, to have themselves recognized as owners of property claimed by the heirs of their late stepmother, who was the second wife of their father.

In the suit No. 56,011, plaintiffs alleged that at the death of their father there were 4 pieces of real estate bought during the community in the name of Mrs. Louisa Harz, their stepmother, with the funds of Stephen M. Westmore or of the community; that, as forced heirs and universal legatees of their father, they inherited his interest in the community; and that they are entitled to this property and to rent thereon since the dissolution of the community.

In the second suit, No. 56,101, plaintiffs claimed a lot of ground, with improvements, bought, they aver, by their father, Gen. Westmore, on the 13th day of November, 1866, although the title was taken by him in the name of Mrs. Louisa Harz. They aver that, at the time of the purchase of this property, Louisa Harz was the mistress of, and living in concubinage with, Stephen M. Westmore, and continued to live with him

until 1876; that they occupied the property as their domicile until the death of Westmore; that they were only married in 1876; and that he was in the possession and control of the property during the whole period.

Two supplemental petitions were filed, in which plaintiffs laid further claims to the property in each case. Two exceptions were interposed—one to each of the supplemental petitions—in which defendants averred that plaintiffs had altered the substance of their demands, and that plaintiffs, in addition, had no cause of action.

These suits, Nos. 56,011 and 56,101, were consolidated, and the exceptions overruled. We have found no error in the court's action overruling the exceptions.

The averments of the supplemental petitions are all directed to the same end. They did not enlarge the substance of the demand. We also think that plaintiffs had a cause of action. Four of the lots were bought during the existence of the community.

In the sale by Patrick Bean, on August 8, 1876, to Mrs. Westmore, her husband intervened, and declared that he had no claim in the purchase. In the sale by Eaber, dated 10th of November, 1876, of another lot, the property was bought by Mrs. Westmore, authorized by her husband, without special declaration from her husband regarding the paraphernal rights of the wife. In another sale, on the 25th of April, 1877, by the same vendor, Mrs. Westmore bought another tract, and again the husband signed without special declaration regarding the wife's paraphernal rights.

With reference to the property involved in the second suit, No. 56,101, it appears that it was bought by Mrs. Westmore from Devereux prior to the marriage between Mr. and Mrs. Westmore. After the suit had been brought, Mrs. Harz died. Her heirs, after her death, were made parties.

Although these properties were bought, the one prior to the marriage in the name of Mrs. Harz, and those after the marriage in the name of Mrs. Westmore, we think it abundantly appears that she did not have the means to become the owner. An attempt was made on the trial to prove that she had paid for these properties. We think in this the defense failed. Her utterances to different persons years ago, who testified on the

trial, show, we think, that she did not claim to buy these properties with her funds. She was poor—a domestic at one of the hotels, receiving small wages—prior to her marriage, and it does not appear with any degree of certainty that she inherited or received money from any one.

Defendants, none the less, seek to meet plaintiffs' demand by averring in answer to the first suit, No. 56,011, that plaintiffs are without right to set aside the deeds in which their late father appeared to approve the purchase made by their stepmother during the marriage, and that they are without right to set aside property bought by Mrs. Westmore prior to her marriage; that the action is not one to protect the legitime.

Taking up the grounds for decision in their inverse order, we can only say in answer to defendant's averment that the action was not brought to protect the legitime that, although the prayer of the plaintiffs' petition looks to the return of the property to the mass, in the body of the petition, among other rights, plaintiffs invoke the right to the legitime. Forced heirs seeking to recover their legitime may attack the acts of their ancestor. This is settled by repeated decisions. In this case the right is not confined to the legitime. Plaintiffs are children of the first marriage, who are claiming in opposition to the heirs of the wife of the second marriage, who died without issue. At the time of the marriage and afterwards, at different dates that the properties were bought, as before mentioned, Westmore having contracted a second marriage, having children by a former marriage, could not give to his wife in excess of the least child's portion, and that only as usufruct. Civ. Code, art. 1752. This was enlarged by subsequent legislation in the year 1882, several years after these properties had been bought. But "the character of the interest and of the ownership therefore takes its impress from the date of the contract." Civ. Code, art. 2141; Estate of Moseman, 38 La. Ann. 219. And therefore the last-cited case has no application.

As relates to two of the properties before referred to as having been bought by the wife without any declaration of the husband as to whether it was bought for the community or for the wife, it unquestionably falls into the community. Property pur-

chased in the name of either spouse is presumed to belong to the community. Cosgrove v. His Creditors, 41 La. Ann. 274, 6 South. 585.

We have said before that the attempt made to prove aliunde that the property was purchased with paraphernal funds of the wife completely failed. The husband, in two acts, not having declared that his wife purchased with her separate paraphernal funds or for herself, his heirs are not estopped from claiming it as community property. Maguire v. Maguire, 40 La. Ann. 579, 4 South. 492. This refers to the purchases evidenced by deeds dated 10th November, 1876, and 27th April, 1877. The heirs are entitled to one-half of this property, it being property of the community.

The two other deeds, also, showing what property was bought during the community, contained the express declaration that the wife bought the property with her own separate funds, and for herself.

Under the jurisprudence of this court, the husband, were he alive and claiming this property, would be estopped by this declaration. Are his heirs also estopped? is the question which presents itself for our study and decision.

At the dates of these respective deeds containing special declarations by the husband, he could not give any immovable property to his wife. We do not think we should give effect to any other law than that in force at the date of the act.

But the heirs are not estopped, for they have a special right under the article cited, and they can attack the deed by parol testimony to the extent that their father was without right to give to his wife. Lazare v. Jacques, 15 La. Ann. 599. Moreover, the declarations made by the husband with the view of favoring the wife constituted a donation in disguise. Mr. and Mrs. Westmore, in attempting to take the property out of the community, violated a prohibitory statute. They resorted to a disguise which confers no title.

Disguised donations, while article 1745 was in force, by one who married a second time, and who sought to give beyond what was permitted by the provisions of the section, were null.

We pass to the issues raised in the second case consolidated; i. e., No. 56,101. Plaintiffs claim this property on the ground that the property was bought with the funds of the father, that he continued from the date of the purchase in its occupation and control, that the purchase was in fraud of their rights, and that she was the concubine of their father.

The testimony shows that these parties lived in concubinage, and we think that it also proves that the price was paid by Westmore.

The defendants, in answer to plaintiffs' contention, say that the prohibition contained in article 1481 of the Civil Code has no application to those who afterward marry. Excerpt from article: "Those who afterward marry are excepted from the rule."

This is broad and plain. The article is of ancient date, and was in force long prior to the concubinage charged by plaintiffs. At the date of the marriage between Mr. Westmore and Louisa Harz, they were, by the clear language of the article, "excepted from the rule" prohibiting donations.

If this be not the meaning, it would have no meaning, and would be absolutely without effect.

Married persons, although they have lived in concubinage prior to the marriage, are entitled after marriage to all the protection and sanction the law accords to married persons. The legislator having chosen to except from the rule those who afterward contract marriage, we cannot do less than interpret the law as written.

Concubinage is against the moral law. It is against social order—all of which we readily grant. At the same time we must give effect to the clearly expressed exception before mentioned. Years ago the words before quoted were not part of the article. They were subsequently added in plain language, which we cannot disregard on the ground urged by plaintiffs.

This brings us to a consideration of the amendment of article 2239 of the Civil Code, which reads: "But forced heirs shall have the same right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit and shall not be restricted to the legitime."

Prior to the date of this law, forced heirs had the right, to the extent of their legitime,

to have simulated contracts decreed void, and in an action to that end they could introduce parol testimony. The amendment quoted enlarged the remedy and accorded an additional right. Forced heirs are not, since the passage of the amendment, restricted to the legitime. But Mrs. Harz, long prior to this enactment, had acquired a right under the existing laws of which she cannot be divested. Her right as owner, if absolute prior to the statute, and if it could not have been attacked under the old law, cannot be destroyed by a remedial statute. The right could not be affected by subsequent legislation. The amendment does not change the rules of evidence, only, but goes much further, and invests forced heirs with a right which they were without authority to exercise prior to the enactment.

The law, as it existed, gave her the right to retain the property without question on the part of the heirs, except to the extent of the legitime. If the legitime be settled, and if they receive from other property of their late father sufficient to satisfy their legitime, they are without right to question the validity of the sale passed long prior to the marriage.

We therefore conclude to affirm the judgment of the district court as relates to the property acquired during the marriage (that is, property numbered 1, 2, 3, and 4 in the judgment appealed from), and to annul it in so far as it decrees that the property acquired prior to the marriage belongs to the succession of Mr. Westmore, described as a certain portion of ground, with buildings and improvements, in the square bounded by St. Charles, Erato, Prytania, and Thalia streets, and as measuring 36 feet, 11 inches, and 4 lines front on St. Charles street, by 91 feet and 5 lines in depth, with the use of a common alley in the rear, 5 feet wide, opening on Erato street.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed to the extent that it decrees that lots 1, 2, 3, and 4, in question, belong to the community—also that defendants account for net revenue thereon—which existed between plaintiffs' father and the late Louisa Harz, and that it be annulled in so far as it decrees that the lot and improvements of which Mrs. Westmore became owner prior

to her marriage fell into the succession. The right of plaintiffs is reserved against this property in case that after the settlement of the community their legitime is still unsatisfied and unpaid. Their right to claim any remaining portion of the legitime is reserved, and to the defendants all rights they may have to defend.

Costs of appeal to be paid by appellees.

NICHOLLS, C. J., and MONROE, J., dissent.

## On Rehearing.

### (Jan. 14, 1904.)

NICHOLLS, C. J. Plaintiffs and the defendants have both applied for and obtained a rehearing in this case. Plaintiffs on that portion of the judgment respecting the property described in the act of sale made on the 13th of November, 1866, before Octave De Armas, notary public, wherein John Devereux and Miss Louisa Harz were parties; the former appearing as vendor, and the latter as vendee, of the property therein sold.

The defendants on that part of the judgment which affirmed the judgment appealed from "to the extent that it decrees that lots 1, 2, 3, and 4, in question, belong to the community—also that defendants account for net revenue therefrom—which existed between plaintiffs' father and the late Louisa Harz."

We have re-examined the record, and see no reasons for altering our original opinion as prayed for in the application for rehearing made by the defendants.

The properties referred to were purchased during the marriage between Stephen M. Westmore and Louisa Harz. The law itself placed the ownership of the same presumptively in the community which existed between those parties.

There is no evidence in the record which would tend to show that the properties do not belong to that community, other than statements made by the husband in the acts of sale in which they were purchased. Defendants' reliance is upon these declarations. If this action had been brought by Stephen M. Westmore himself, he would, under the jurisprudence of the state, have been estopped from denying the truthfulness of that which in the acts he declared to be the facts of the case; but this suit is not brought by

Westmore himself, but by his son and his daughter. By reason of this relationship to him, they fall under the designation of his "forced heirs." As to parties holding such relations to a deceased person, the estoppel which would have bound him has been released by the provisions of Act No. 5, p. 12, of 1884. So far as they are concerned, matters are thrown open to examination as to the real facts of the case, and the rights of parties are not made to rest upon the statements of the father. These rights are not necessarily rights affecting the legitime. The rules of evidence are relaxed in favor of the children, and they are granted a remedy which was denied the father. West v. His Creditors, 1 La. Ann. 365; Dunning v. West, 51 La. Ann. 622, 25 South. 306. The rights of third parties are not involved in this litigation.

We do not think that plaintiffs are entitled to a judgment decreeing the property which was conveyed in the act before De Armas, notary, to Louisa Harz, to have belonged to their father. The only parties to that act were Devereux, the vendor, and Louisa Harz, the vendee. Westmore nowhere appears in it. The contract which was created by that act was unquestionably a real one. Devereux intended to sell, and Miss Harz to buy, the property. She was of full age, and under no legal incapacity. It is claimed that at the moment the act of sale was executed she was Westmore's mistress, but the precise date at which her relations with him as such commenced is not shown. Assuming that she was his mistress at that time, he certainly did not donate the property in question to her, for it was not his to donate to her. The property belonged to Devereux, and was transferred directly from him to Miss Harz. Scudder v. Howe, 44 La. Ann. 1103, 11 South. 824. If he donated anything to her, it was not the property but the $2,878, the money with which she made the cash payment. Todd v. Larkin, 38 La. Ann. 674; Wolverton v. Stevenson, 52 La. Ann. 1153, 27 South. 674. The title itself passed to her when she made that payment, and when she executed simultaneously, as she did, her own notes for the balance of the price, secured by mortgage on the property. The title cannot be made to vest in Westmore by parol evidence. Breaux's Digest, p.

369, No. 2; Hoffmann v. Ackermann, 35 South. 295;[1] Burg v. Rivera, 105 La. 146, 29 South. 482. The "title" to the property would not be affected by who would and who would not pay the after maturing notes.

If Westmore donated to her the moneys with which she made all the payments, and there was anything subject to attack by his heirs, it was the donation to her of these moneys, and not the ownership of the property which she bought and paid for with the same. If her rights in that property could be reached through attacks of the heirs, it would be by indirection, and by way of consequence of their successful attacks upon the donations of money made to her. The mere fact itself that she may have been his mistress when he gave her the $2,878 did not make that donation absolutely null and void, under article 1481 of the Civil Code. Westmore was at that time worth between forty and seventy-five thousand dollars. If this amount was more than he was entitled to donate under the then existing law and the then existing conditions, the donation was not null, but reducible. The donation would not have been absolutely null, under article 1491 of the Civil Code, as a "disguised donation to a person incapable of receiving."

If a donation was made to her on that occasion, it was one made to her as a manual gift of money prior to the purchase, for she had the money in her possession at that time. There is no evidence of a donation of money having been made in her favor "through an interposed person," nor of such a donation having been made to her "in the form of an onerous contract."

Plaintiffs, still claiming ownership of this property itself, refer us to article 1752 of the Civil Code, to the effect that a man or woman who contracts a second or subsequent marriage, having children of a former one, can give to his wife (the second wife), or she to her husband (the second husband), only the least child's portion, and that only as a usufruct, and in no case shall the portion of which the donee is to have the usufruct exceed the fifth part of the donor's estate.

We are not called on to say whether this article would apply to a donation made to his mistress by a widower having children,

[1] 110 La. 1070.

as well as to a donation to his second wife, should he contract a second marriage.

It will be time enough to discuss that question when a case comes before us in which it is presented to us for decision. The only issue we have presently to decide is whether this particular property became, by its purchase, the property of Stephen M. Westmore, or whether it became by its purchase the property of Louisa Harz.

We are of the opinion, and so decide, that the ownership of that property vested by the purchase in Louisa Harz, and that, if the plaintiffs had or have any cause of action or right of attack against her by reason of donations made to her by their father, it is by reason of donations of money which he may have made to her. This cause of action and right of attack, if any they have, is expressly reserved to them, as is expressly reserved to the defendants all rights of defense which they may have in the premises. This was the scope of our original judgment on this branch of the case.

For the reasons herein assigned, it is ordered that our original judgment remain in full force and effect.