It does not appear that the four cousins, recognized as heirs, are the only heirs.

It does appear that John A. Blanchard had a sister, and it is not proven that she has departed this life.

One who alleges that she is the sister files her affidavit, and others swore—ex parte, it is true—to her identity.

If she is the sister of John A. Blanchard, she had a right to appeal within the 12 months. If she is not the sister, she can gain nothing.

We will give sufficient effect to the affidavits to ascertain whether or not she is the sister.

If she is, it would be unfortunate for her to lose that to which she is entitled upon evidence which was irregularly taken and which does not show that she is dead.

She has been residing at no great distance from the state. It will not be difficult to ascertain whether or not she is the sister.

For reasons assigned, the judgment appealed from is avoided, annulled, and reversed, and the case is remanded, to determine whether Ellen Blanchard is the sister of John A. Blanchard, and, if she is the sister, to determine the interest of the parties, and that the case may be proceeded with according to law.

───────

(55 South. 775.)

No. 18,460.

BEAUCHAMP v. LEVY et al.

(June 15, 1911. Rehearing Denied June 29, 1911.)

*(Syllabus by the Court.)*

DONATIONS—VALIDITY.

The marriage of two people who have lived in concubinage has the effect of destroying the legal status created by the concubinage, so that a donation of an immovable made by the man to his concubine will be viewed after the marriage in the light of a donation made by the man to one who was not his concubine, and while it may be voidable, it is not void.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. § 72; Dec. Dig. § 36.*]

Appeal from Eighteenth Judicial District Court, Parish of Lafayette; Ralph W. Elliott, Judge ad hoc.

Action by Clara Beauchamp against Felicianne Levy and others. Judgment for plaintiff, and defendants appeal. Reversed.

J. Arthur Charbonnet and Chas. Louque, for appellants. John L. Kennedy and Jerome Mouton, for appellee.

BREAUX, C. J. Plaintiff brought this action to have annulled a deed conveying a tract of land to the defendant, situated in the parish of Lafayette.

The late Dr. Euclide F. Beauchamp was the father of four children, issue of his marriage with Frances C. Brashear, a well and favorably known name in this state.

Of this marriage, one of the plaintiffs, to wit, Mrs. Wm. J. Irvine, is the daughter; the others are the children of another daughter, who is deceased, and are, therefore, the grandchildren of the decedent, Dr. Euclide F. Beauchamp.

They inherit from their grandfather by representation of their late mother.

The late Dr. Beauchamp at one time had a large and paying practice in the parish of Lafayette.

He lost his wife years ago, and several years after, during widowerhood, Felicianne Levy became his concubine.

She is a colored woman of African descent.

No objection is raised in the pleadings on that ground.

From about the year 1875, she and the doctor lived together as man and wife. It was generally known. It had become so public, Dr. Beauchamp being well related, that he was notified to leave the community.

He accordingly left.

A number of children claim that they are the issue of this concubinage.

About two years before Dr. Beauchamp left the parish of Lafayette, to wit, on the 27th day of March, 1886, he sold to Felicianne Levy, his concubine, a tract of land measuring 100 arpents, for the price of $500 cash.

Years after Dr. Beauchamp had left the parish of Lafayette, he obtained in the locality in which he resided, a license to marry the defendant, and they were married on the 4th day of September, 1890.

The doctor died on the 30th day of March, 1892.

Plaintiff insists that, concubinage having been proven, and the defendant having failed to show that the price for the land was paid, it was a donation in disguise.

It is true as relates to the price of the land that the evidence is not satisfactory because of the contradiction of witnesses.

Defendant has failed to prove how it was that she had earned sufficient to pay cash for the land.

She attempted to prove that she worked the land as a tenant of the lessee for a year or more, and that during this work on the rented farm she had succeeded in earning sufficient money to pay the price.

In one respect she testified extravagantly; she said that she had earned $900 on this place. Cultivated cane, cotton, corn, and rice thereon.

It was not shown that the cane was sold for anything.

The same as relates to the other products except cotton, and her account and that of her witnesses in regard to the amount she realized from the six bales of cotton is not creditable.

She spoke of other revenues, but, as she stated while testifying that she had earned the price paid as a lessee on the place, known as the Jean Louis Place, we would not be justified in considering other revenues in view of her testimony in this respect.

She does not recollect how much cash she paid and how much was represented by a note representing money she said she had loaned to Dr. Beauchamp to buy a horse. She did not remember the price of the horse, although she remembered other details of no importance whatever.

From a few acres of poorly cultivated land, a few of her witnesses will have it that she cultivated a crop which amounted to considerable.

Other witnesses of undoubted veracity, who live near, state positively that the crop was of little, if any, value.

With reference to the tract of land which defendant bought from Dr. Beauchamp, the evidence shows that after she became the owner of this land, she sold 25 arpents of it to Joseph Jeffry (made defendant in the original petition) for $1,750.

Plaintiffs amended their original petition and abandoned their suit against Jeffry, alleging that as the purchaser was in good faith in buying this land they would not be entitled to a judgment against him for the 25 acres but that they are entitled to the price for which the defendant had sold this land to Jeffry.

They therefore pray for a judgment against the defendant for the amount received by her from Jeffry, vendee.

Defendant answered plaintiffs' petition and alleged that she was in possession since the year 1886, the date of the sale; that her deed is entirely valid, and interposed the plea of five years' prescription.

The judge of the district court gave judgment to Mrs. Irvine and to the grandchildren of the late Dr. Beauchamp, representing the estate of their mother, for the whole property in the proportion of one-half of the property to Mrs. Irvine and the remainder to the grandchildren.

He allowed plaintiffs $3 per month rental

for each arpent of that which remains in possession of the defendant (to wit, 75 arpents) during the period of three years prior to the date of the judgment, and the same rate until the delivery of the property, and rendered judgment in favor of plaintiffs for the $1,750 against defendant, Felicianne Levy, with legal interest from December 5, 1906, amount paid by Jeffry to the defendant.

The defendant appealed.

We have arrived at the conclusion that the defendant and the late Dr. Beauchamp lived together in open concubinage from a time preceding the date of the sale attacked, and that the evidence, as relates to the price, is not sufficient to justify us in finding that the price had been paid to Dr. Beauchamp for the land.

This being the state of the facts, the questions of law were considered with the following result:

It was as alleged by plaintiffs, a donation under the guise of a sale.

The position is taken on the part of the defense that the suit is for the revocation of a donation to a concubine, and is, therefore, to be governed by article 1481 of the Civil Code.

This article has in times past received the earnest attention of this court. Never, however, from a viewpoint entirely similar to the one now before us.

Immovable property alone is the bone of contention in this suit.

In suits of somewhat recent date, the issues related to movable property, as to which a donation is specially sanctioned if it does not exceed one-tenth of the whole estate. Westmore v. Hartz, 111 La. 310, 35 South. 578.

On the rehearing, the court said:

"If a donation was made to her, it was one made to her as a manual gift of money prior to the purchase."

The court in the cited decision sustained the gift.

This gift protected the defendant in the cited case, as it was held, substantially, that plaintiffs had no title to the land which had been bought by the defendant with the manual gift; that is, with money given to the concubine. That if plaintiffs had any right it was for the money donated, and not for the property bought by the defendant.

But to return to our case: Great reliance is placed by defendant on article 1754 of the Civil Code, which provides that husbands and wives cannot give to each other indirectly beyond what is permitted by law.

The plaintiffs urge as relates to husbands and wives that all donations in disguise are null and void. We can only say that is entirely true, and would have to be maintained if this were a donation made by the husband to his wife.

We have seen that the defendant was not the wife of Dr. Beauchamp at the date of the sale; she was only his concubine, so that the article 1754 does not apply. Malbrough v. Roundtree, 128 La. 39, 54 South. 463.

The court held that donations to third persons are not null under the terms of the article.

That in view of the last paragraph of article 1754 the concubine, after the marriage, was under the operation of law, as if she were a third person.

In the cited case, the concubine and her paramour did not marry, so that the court did not have to consider the effect of the last paragraph of the article just cited.

In the present case, because of the marriage of the concubine with the donor or vendor, the situation is entirely different.

In the Westmore Case, cited above, the court said:

"The Legislature having chosen to except those who have lived in concubinage but who have repented and have become husband and wife, we can only interpret the law as written"

—but we cannot consider that the relations of husband and wife began before the cere-

mony of marriage. They date only from the day of marriage, and prior to that time paramour and concubine are not to be judged by the laws which regulate the family ties.

We have read carefully all of the decisions cited by learned counsel for plaintiffs on this point, and in all of these decisions the disguised donation was between husband and wife, not between the husband and his concubine.

In the Succession of Ames, 33 La. Ann. 1317, it was held that a disguised donation between husband and wife is null and void.

That is very true and would be controlling here if the parties had been husband and wife at the time of the donation.

The same is true of Scott v. Briscoe, 37 La. Ann. 179.

In the case of Heirs of Casanova v. Acosta, 1 La. 187, a well-considered opinion, the testator, the husband, sought to advantage the wife and her heirs by a declaration, which was not true, that the property was common when it was the property of the husband.

In the case of Thibodeaux v. Herpin, 6 La. Ann. 676, it was also between husband and wife.

The court said, the last cited case on the second appeal, that the distinction of a reducible donation between husband and wife and donations which are null and void on the ground of interposition or disguise comes to us from the Roman law and refers to some distinction or difference on that account.

Evidently, the court said, both paragraphs of article 1754 refer to husband and wife, as in the ruling the husband and wife are specially referred to.

In other words, it is not a case of a husband who had sold property to his concubine previous to his marriage with her.

The same is true of Leleu v. Dooley, 48 La. Ann. 508, 19 South. 470; also of Dupre v. Uzee, 6 La. Ann. 280.

But the wife from the date of the marriage, though relieved from the incapacity which concubinage occasions, is subject to rules laid down.

If, as a concubine, she was a vendee without consideration and recipient of property, a donation, under the guise of a sale, would be worthless. It would be different, if she, after the disguised donation, married her paramour.

As there were children of a first marriage, he could give one-third of his property, and, as he married his concubine, any donation made as a donation for over one-third was reducible.

All disguised donations are null and void as between husband and wife. Civil Code, art. 1754. Thibodeaux v. Herpin, 6 La. Ann. 674.

Article 1754 contains two provisions:

First. If excessive donations are made, they are reducible.

Second. If disguised, between husband and wife, they are null and void.

That view dates back to the Roman law, Digest Book 24, title I. See Pothier's Donations, No. 78; also Casanova v. Acosta, 1 La. 185, referred to especially in the decision cited above. 6 La. Ann. 674.

The French commentators of recent date are equally as pronounced in regard to the cited articles. See Huc, comments about article 1909 of the French Code.

But the proviso sanctions donation as between paramour and concubine in the event that they became husband and wife. At least to the extent that it is possible for one to give to one not a concubine.

If the one who afterward becomes the husband is restrained by no legal tie, he can make donations to her, provided he does not divest himself of all his property, for that is expressly prohibited.

That is not the point here.

If he, during his widowerhood, lives with a concubine (whom he afterward marries) and makes a donation, is it null and void?

The answer is, that, as relates to creditors and as relates to heirs, it is not void, but voidable.

An illustration will serve a purpose.

A. has no creditors and no children or other forced heirs. He can make a donation or a sale without requiring the price. Provided he does not completely divest himself, he can sell the property and never collect or receive the price. As far as he is concerned, it is after the marriage, as if he were contracting with one with whom he had never lived in concubinage. While under French and Roman law, donations to a concubine are always considered null and void, it is necessarily different under Louisiana law because of the proviso, to which we have before referred.

Under the Code of 1808, there was no such proviso. It was inserted in the Code of 1825.

We have made some research to find similar provision under Spanish law. We found none.

Not only the proviso in question makes considerable difference, but the whole article is thereby different from the article as it read prior to the Code of 1825.

We insert the article here in full that it may be considered from that point of view:

"Those who have lived together in open concubinage are respectively incapable of making to each other, whether inter vivos or mortis causa, any donation of immovables; and, if they make a donation of movables, it cannot exceed one-tenth part of the whole value of their estate."

Those who afterward marry are excepted from the rule. Read as a whole, the article gives rise to the thought that in case of marriage the act is at most voidable.

Although the point has not been pleaded, the possible retroactivity of the article has given us some concern in this, that, until the marriage, from a legal point of view, the sale is in a dormant condition. It is, as it were, awakened and made legal by the marriage.

We have given the subject most serious thought, and have arrived at the conclusion that it is not beyond the legislative power to enact such a law in matter relating to the status of persons.

The law cannot make that which has been not to have been, but it can give legal effect to it from a date anterior to the passage of the act.

An immoral act can be expunged if it does not affect the rights of third persons.

If it be thought that the nonretroactive effect should be general and apply, to be consistent, whether others are or are not concerned.

It can be said in answer that a law cannot be considered absolutely void when it is possible to cure the illegal situation by marriage.

Denunciation of concubinage is a penalty which may be recalled and removed ab origine.

Grave difficulties arise at this point.

We are of opinion that the weight of the authorities sustain the views we have expressed.

The plaintiff has attacked the law as void. That presents the only issue.

We are not of opinion that it is void, although it is voidable.

The last, the alleged voidable act, is disposed of by the prescription pleaded.

We have not heretofore discussed the act of 1884 (Act No. 5 of 1884) regarding the right of heirs and creditors to have a transfer annulled because of undue preference.

No question but that under that act forced heirs in regard to annulling the sale of the whole property have the right of creditors.

But it remains that, in the pending case,

the transfer of the land was made under the form of an onerous contract. The decision of the court in Delamour. v. Rogers, 7 La. Ann. 153, citing the Viens Case in 8 Mart. (O. S.) 11, has some analogy.

A very similar decision was rendered in Moore v. Wartelle, 39 La. Ann. 1069, 3 South. 384; this court said in that case the transfer was in the form of a sale, intended as a donation. It was a serious act. The court held that the burden of proof was with plaintiff to set aside the sale, citing, in the same subject, Trahan v. McManus, 2 La. 215, in which the court said a donation in the form of an onerous contract is not void; that it was a question of reduction.

It devolves upon the heirs to prove that no price had been paid, 39 La. Ann. 1069, 3 South. 384. See, also, on the same point, Laycock v. Bird, 13 La. Ann. 173.

It is therefore decreed that the judgment of the court be reversed, and it is further decreed that plaintiff's demand be rejected, and that plaintiff and appellee pay the costs of both courts.

PROVOSTY, J., concurs.