167 So.2d 533 (1964)
Succession of Louis GLYNN, Sr.
No. 1525.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1964.
Rehearing Denied October 7, 1964.
Writ Refused December 1, 1964.
*534 Lawrence A. Wheeler, New Orleans, for plaintiffs-appellants.
Lyall G. Shiell, Jr., George H. Fust, Joseph S. Russo, New Orleans, for defendant-appellee.
Before SAMUEL, CHASEZ and BARNETTE, JJ.
CHASEZ, Judge.
Louis Glynn, Sr., died in New Orleans, his domicile, on June 28, 1961. His succession proceedings were opened by two persons named Louis Glynn, Jr., and John Glynn, who, claiming to be sons of decedent, made formal application to search for his will.
When decedent's will was found Louis Glynn, Jr., filed an opposition to its probate.
Ellen Morgan, universal legatee under the will, filed an exception of no right of action and no cause of action to the opposition of Louis Glynn, Jr., alleging Louis Glynn, Jr., was an unacknowledged illegitimate child of decedent. This exception was maintained and the opposition was dismissed. No appeal from the judgment maintaining the exception was taken and this judgment is now final.
No further proceedings were taken by John Glynn.
Thereafter, Timothy Robinson and Mrs. Priscilla Robinson, wife of John Fernandez, filed an opposition to the probate of the will. The Robinsons are children of decedent's predeceased sister, Corrie Glynn, wife of Clarence Robinson. Opponents alleged the mental incapacity of decedent to make a will, his inability to read (as required for the statutory will, LSA-R.S. 9:2443), and undue influence; they further alleged that Ellen Morgan lived in open concubinage with decedent and was therefore prohibited from being his universal legatee by LSA-C.C. art. 1481.
From judgments dismissing their opposition and ordering the probate and execution of the will Timothy Robinson and Priscilla Robinson, wife of John Fernandez, bring this appeal.
Apparently appellants no longer seriously urge insanity and undue influence, and the record contains no proof of either. We further observe that LSA-C.C. art. 1492 prohibits receiving evidence that dispositions have been made through "suggestion or captation"; under Louisiana's civil law system the common law ground of prior "undue influence" is not a cause for nullity *535 of a will; Succession of Schlumbrecht, 138 La. 173, 70 So. 76 (1915)
The claim that decedent could not read is still urged on appeal. The ability to read is a necessary element of capacity for a testator to make a statutory will; LSA-R.S. 9:2443. Capacity is always presumed, and the burden of proof of lack of capacity was on appellants. Appellants did not introduce a word of testimony to show testator's inability to read. The only reference to his ability to read was by the legatee, Ellen Morgan, who, in response to a question by the District Judge about her relationship with testator, explained she had returned to New Orleans from San Francisco to help decedent, who had had a stroke, "because I knowed he couldn't read or write, and the only thing he could do was sign his name and he wrote and asked me to come and look after him." The record establishes that testator had in fact suffered a stroke, and as a whole shows that he was quite ill and in need of assistance when he asked the legatee to come back to New Orleans to help him. But the record also clearly establishes that he recovered from his illness to such an extent that, on the day he executed his will, he personally drove his own car to pick up a witness and then to his attorney's office. The notary who executed the will testified that on that day testator was mentally alert and physically in fairly good condition for a man of his age. Considering the legatee's testimony in the light of all the circumstances, it is entirely possible that she referred to a temporary inability to read and write brought on by the stroke, as of the time she returned to New Orleans in September of 1958. The pertinent time, however, is the date of the will, and as of that time testator had largely recovered from the stroke. The matter was not pursued by appellants, who, we repeat, had the burden of proof on this issue and the District Judge, who heard the testimony and observed the demeanor of the witness, concluded that inability to read was not proven. Under all of the facts contained in the record, we are of the opinion that the appellants have not carried their burden of proving that testator was not able to read.
Appellants urge that the disposition in favor of a former concubine of decedent is ineffective under LSA-C.C. art. 1481, except to the limited extent there provided; but this argument was rejected by the District Court. The District Court correctly described the factual situation. The legatee freely admitted having lived in open concubinage with testator for six or seven years prior to 1941. It would serve no purpose to recite the details of the testimony; suffice it to say that the legatee admitted on both direct and cross-examination that she lived with decedent as husband and wife, without being married, and without any effort to conceal the true nature of their relationship and this fact was generally known. The cause of the termination of the concubinage in 1941 was decedent's decision to marry a third party. The legatee at that time moved to California and there is some evidence that she there married another third party. Decedent's spouse thereafter died and apparently the legatee and her spouse terminated their relationship by 1958, at which time the legatee returned to New Orleans at decedent's request to care for him and to attend to his needs after he had a stroke. The record as a whole satisfies us that decedent and the legatee did not resume their relationship of concubinage.
Article 1481 of the LSA-Civil Code reads:
"Those who have lived together in open concubinage are respectively incapable of making to each other, whether inter vivos or mortis causa, any donation of immovables; and if they make a donation of movables, it can not exceed one-tenth part of the whole value of their estate.
"Those who afterwards marry are excepted from this rule."
The first paragraph of the article limits the capacity of persons who "have lived *536 together", and not merely those who "live together", or "are living together" at the death of the testator, to make donations to each other. We deem it immaterial, under the language of the Code, that the concubinage may have ceased even several years prior to the attempted donation; once persons "have lived together" in open concubinage, they will forever "have lived together" in open concubinage.
However, it is contended that, because of the subsequent marriages of the parties (not to each other), the second paragraph of the codal article permits the legacy in question. The argument is that the text excepts "those who afterwards marry", without further qualification, and that the parties here did "afterwards marry", although they did not marry each other. We reject this argument. The only accomplishment of "afterwards" marriages to third parties, (and even this does not necessarily follow,) would be the termination of the concubinage; yet it is clear from the first paragraph of the article that mere termination does not erase the past, the "having lived together" which limits capacity to give and receive. Marriage to each other not only terminates the concubinage, but also makes it impossible to resume the concubinage, and moreover creates a new status of husband and wife; and the reasonable interpretation of the second paragraph is that a husband and wife, who previously lived in concubinage, are nevertheless enabled to give to and receive from each other as fully as any other husband and wife. "Married persons, although they have lived in concubinage prior to the marriage, are entitled after marriage to all the protection and sanction the law accords to married persons"; Westmore v. Harz, 111 La. 305, 35 So. 578 (1902). For a discussion of the history of article 1481 see Beauchamp v. Levy, 129 La. 233, 55 So. 775 (1911).
We hold that the second paragraph of article 1481 only excepts persons who, after having lived in concubinage, marry each other. Ellen Morgan, the universal legatee in this case, did live in open concubinage with Louis Glynn, Sr., the decedent, and never afterwards married him, and the decedent was therefore incapable under article 1481 of legally making any donation to her except of movables to the extent of 1/10 part of the whole value of his estate.
Accordingly, the judgment appealed from is affirmed insofar as it admits the decedent's will to probate, since the attack on the will failed; the judgment is amended so as to order execution of the will in favor of the legatee, Ellen Morgan, only in respect to the decedent's movable property not in excess of 1/10 of the whole value of his estate; and for such partial execution of the will and for distribution of the balance of decedent's estate as in intestacy, the entire matter is remanded to the District Court for further proceedings consistent with this opinion and according to law. All costs of this Court shall be borne by appellee.
Affirmed in part; amended in part and remanded.