LEGI-IE, J.
The pleadings herein were fully set forth when the case was previously appealed upon a judgment by the trial court maintaining an exception of no cause of action. See 139 La. 551, 71 South. 846. We held on that appeal quoting from the syllabus by the court:
“There is no law or jurisprudence to the effect that a donation, whether inter vivos or mortis causa, made in fraud of the law and of the rights of third persons, is any the less invalid, or any the less open to attack, when made through an interposed person than when made directly; and, when a petitioner alleges that he is the sole heir of a deceased testatrix, and that-she has made donations of her property which are void because of the incapacity of the donee to receive them, and has disguised, or attempted to disguise, the same, by apparently valid donations, in the form of a special and a universal legacy, to a person selected and. agreed upon as the intermediary for the conveyance of the property to such incapable donee, the petition discloses a cause of action for the -nullity of such prohibited donations.”
Upon this finding of law, the case was remanded to tbe lower court and. tried, and from a judgment in favor of the defendant the plaintiff has again appealed.
The record shows that Mary A. Deubler entered the demimonde when she was quite young, and that by the time she had reached mature womanhood she became landlady of several houses of ill fame in the city of New Orleans. She managed to accumulate a modest fortune and died in 1914, possessed of a good deal of property. Her brother, who is plaintiff in the present litigation, was well •aware', of his sister’s mode of living. He was married and reared a family of several children, among whom was a daughter, Anna M. Deubler.-' The deceased became very much attached • to her" niece; Anna, and undertook, while the latter was young and innocent, to rear and educate her.' She first sent her to local schools, then to Catholic convents, and finally brought her to Paris, where she entered her in another Catholic convent to complete her education, always surrounding her' with the most refined and moral influences. During all these years, Anna was absolutely ignorant of the public life which her aunt led under assumed names, and, appreciative of the many benefactions heaped upon her, she also became very much attached to her “auntie.” When Anna finished her studies in Paris, and she had reached that stage of life where, prepared by refined education, and moral training, she would naturally be expected to enter the social world, Mary A. Deubler, who had up to that time been easily able to conceal her real life from her cherished niece, was confronted with the difficulty of bringing Anna back to New Orleans without exposing herself. All that Anna knew of her aunt was that she was married to John Thomas Brady and that she was possessed of some means. Brady was known to Anna as “Uncle Tom,” and she frankly testifies that in all her intercourse with her aunt, she no more doubted her aunt’s marriage than she did that of her own father and mother. “Auntie” and “Uncle Tom” accompanied her to convent, took her to Paris, and traveled rather extensively with her in Europe, and when she was brought back to Louisiana, she was received in a home, near Covington or Abita Springs, in the parish of St. Tammany, where her supposed uncle and her aunt spent their summers. After remaining there some time, she was brought to their city home on a fashionable residence street in the city of New Orleans.
In truth and in fact Brady was a paramour of Mary A. Deubler. She used him as a shield to keep from Anna the knowledge of her life in the underworld, by conveniently representing him by her words and actions as her lawful husband.
While her niece was at school, and in fact *325 up to che time of her death, Mary A. Deubler kept on conducting immoral houses. She divided her time between her brothel and her apparently respectable homes, near Covington and in New Orleans. She had bought these two homes where she assumed the r61e of respectability as Mrs. T. J. Brady solely to maintain the deception which she had practiced upon her niece. She persistently cautioned all persons she dealt with in a business way, and all her acquaintances who had occasion to visit these homes, never to address her .except as Mrs.' Brady. • Thus this unfortunate woman, while she .desperately clung to the allurements of the underworld in which she had spent most of her life, was not devoid of many redeeming qualities. She seemed anxious to atone for her life of shame by rearing her niece with all the advantages of education, refinement, and chastity, and in her last moments expressed the desire that her niece write a book, the purpose of which would be to save other young girls from the pitfalls into which she had fallen.
The plaintiff, a man without means, and his wife, spent a good deal of their time and partly lived in the city home of Mary A. Deubler and her paramour. Driven by want, they not only countenanced the mode of life of their sister, but accepted her generosity, the source of which was well known to them, and they actively connived with her in deceiving their own daughter.
Such, briefly, was the condition surrounding the parties to this litigation, when Mary A. Deubler succumbed to illness. Her illness became so severe that in her delirium she finally tore down the curtain which had concealed her inner life, and Anna for the first 'timé was shocked to learn the truth. The niece’s first impulse was to leave her aunt’s roof, but Brady, as well as her father and her mother, the only persons from whom she could reasonably seek advice, prevailed upon her to remain. The aunt’s death was momentarily expected, and would at most be only a matter of a short while. It was arranged among them that Anna would save the situation by marrying Brady, which event took place a little over one week after the aunt’s death.
It was about the year 1901 or 1902 that Mary Deubler, as Mrs. Brady, in company with Brady, took Anna Deubler to Paris. Anna returned from Europe about the year 1904. Mary Deubler made her last will and testament, constituting Anna as her special and residuary legatee, in the year 1903. In January, 1913, by act under private signature, she sold to Brady her city home and its contents in consideration of $25,000 in cash, which she acknowledged to have received at various times during the past 20 years, and from which he released her from all liability, and in addition thereto there was a consideration based upon services rendered to her, as fully set forth in said act. She died February 14, 1914, and a few days thereafter, on the 21st, Anna Deubler, her universal legatee, appeared in an act before Robert Legier, notary public, and approved, ratified, and confirmed the sale of January, 1913, by Mary Deubler to John T. Brady.
[1, 2] The question at issue is then whether the transfer of the property from Mary A. Deubler to John T. Brady, executed January 13, 1913, approved and ratified by Anna M. Deubler, universal legatee of Mary A.- Deubler, on February 21, 1914, is a donation pure and simple, made by Mary A. Deubler, to her paramour, John T. Brady, through the interposition of Anna M. Deubler, in contravention of articles 14S1 and 1491, Civ. Code.
It is important to note that the will of Mary A. Deubler of June 29, 1903, vests full, complete, and unconditional title in Anna M. Deubler, her universal legatee, to all the property of the testatrix, save a special legacy to her brother, Henry Deubler, plaintiff in this suit. This complete and unconditional title became vested in Anna M. Deubler on February-, 1914, as soon as the *327 will of Mary A. Deubler was probated. When, therefore, Anna M. Deubler became unconditionally vested with' the title to decedent’s property, there was included in such title all the property owned by testatrix at the time of her death. If the transfer by Mary A. Deubler to John T. Brady of the Esplanade street property, in dispute in this case, was null, under article 1481, Civ. Code, as being a disguised donation by a concubine to her paramour, title to that property, just like title to all the other property of decedent, remained in testatrix to the moment of her death, it became by the probate of her will vested in Anna M. Deubler, and the nullity of the donation inured to the latter’s benefit. Of this there could be no question, but plaintiff contends that when Anna M. Deubler, subsequently, on the 21st of February, ratified and confirmed the null and void donation by Mary A. Deubler to J. T. Brady, she evidenced the fact that she was only an interposed party to carry out a scheme by Mary A. Deubler to commit a fraud upon the law and upon the rights of her father Peter Deubler. There is not one scintilla of evidence, in the record, outside of the so-called act of ratification of F'ebruary 21st, creating even a suspicion that there was an understanding between Mary A. and Anna M. Deubler to circumvent the law and perpetrate a legal fraud. The evidence is clear that the so-called act of ratification was drawn up without the knowledge of Anna M. Deubler, by the' attorneys of Brady, and that it was only signed by Anna M. Deubler upon her own attorneys’ advice, and under the impression that she was simply ratifying what appeared to her as a valid sale made by her aunt. While such an act of ratification might indicate and even furnish a presumption, under other and different circumstances, of collusion' and a design by the parties to consummate a transaction which the law repudiates as contrary to good morals, the circumstances surrounding this case are not reconcilable with such a | presumption. Anna M. Deubler was at school and in her teens when the will of Mary A. Deubler was made, and when she first gleaned the light as to her aunt’s past life that unfortunate woman was almost in the throes of death. Neither she nor her aunt were then in a mental condition to concoct the scheme with which they are charged. We are therefore of the opinion that Anna M. Deubler was not an interposed party, and that plaintiff has failed to prove his case. We have assumed as a fact, in this discussion, that the sale from Mary A. Deubler to John T. Brady of January 13, 1913, was a disguised donation; but, if it is not, then plaintiff is without interest in attacking the ratification by Asma M. Deubler.
Judgment affirmed.
MONROE, O. J., dissents.
O’NIHLL, J., concurs in the decree.
PROVO STY, J., absent on account of illness, takes no part.