On Rehearing.
HAWTHORNE, Justice.
The act here under attack by the collateral heirs recited the consideration for the •conveyance of the property thus:
“* * * -phe consideration for which this sale is passed is $2,150.00, which said sum is insufficient within itself to pay Vendee, the amount of money that Vendor owes her for the faithful performance of valu-' able services rendered to him during the last 10 years or more, and it is in consideration of those valuable services and for the payment of same that Vendor executes this act of sale. * * *”
'In this instrument the vendor reserved unto himself the usufruct of the property conveyed, in the following language:
“Vendor reserves unto himself the right of use, usufruct, and habitation of the above described property.”
The instrument on its face is a dation en paiement, and it was held to be such in our opinion on original hearing, and consequently the articles of our Civil Code dealing with prohibited donations were found to be inapplicable. However, in our study of the application for rehearing, we considered for the first time the question of whether Article 2480 of the Code might be applicable in this case. That article provides :
“In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale.”
The record shows that the intervenor and third opponent, Aspz Dupre, now Mrs. Tommie Dietz, was born on June 29, 1922. At that time her father, Rudolph Dupre, and her mother were living together as husband and wife although he was married to another. Intervenor lived with her father and mother on the property described in the instrument here under attack until she married in 1940, and afterwards she and her husband lived on the place until some time in 1942, and had returned to live there shortly before this proceeding was filed. This property, where Rudolph Dupre lived and resided with Mrs. Dietz’s mother, re *918 mained in his possession until his death in 1941.
In the instant case the instrument, which on its face is a giving in payment, is subject to all the rules which govern the ordinary contract of sale. See Article 2659 of the Civil Code. Since the property described in the act remained in the possession of the seller named therein, and since he retained the usufruct thereof, under Article 2480, quoted supra, the presumption is that the dation was simulated, and it was incumbent upon the intervenor, Mrs. Dietz, to produce proof that the parties thereto were acting'in good faith and to establish that it was • a real transaction and that tire debt named therein actually existed for services which she had rendered to the deceased grantor.
Mrs. Dietz did not offer one scintilla of evidence to establish the reality of the transaction, that is, that a debt existed for valuable services rendered by her. On the contrary, it is shown by the heirs that, when the instrument was executed on March 11, 1939, opponent was under 17 years of age and that the 10-year period during which services were allegedly rendered, as stipulated in the conveyance, would have begun when opponent was approximately six or seven years old, while she was being reared by her father and mother and provided for by them as their child. Under these circumstances, in the absence of any evidence to the contrary showing the nature of the services and the existence of the debt for such services in the sum of $2150.00, we must conclude that the conveyance, though on its face a dation en paiement, was nothing more than a donation in disguise of an immovable made to a person interposed, and is therefore null and void because prohibited by Articles 1481 and 1491 of the Civil Code. |
The appellee, Mrs. Dietz, takes the position that the collateral heirs of the deceased have no right to attack the conveyance of the property to her, as they are not forced heirs. Ordinarily this position would be well taken, for under Article 2236 of the Code the authentic act is full proof of the agreement contained in it against the contracting parties unless it be declared and proved a forgery, and under Article 2239, as amended, it is to forced heirs that the right is given to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit. Moreover, the jurisprudence is well settled that collateral -heirs are without right to prove -by parol evidence that the contract of a person from whom they inherit is something other than that which it purports to be, that is, simulated. Collins v. Pratt, 15 La.Ann. 42; Boone and Cockerham, Executors, v. Carroll, 35 La.Ann. 281; Succession of Block, 137 La. 302, 68 So. 618.
There is an exception to this rule, however, when, the collateral 'heirs attack a contract made by the person from whom they inherit on the ground that it is a disguised disposition which is derogatory to *920 public order and policy, and the instant case falls within this exception. In Lazare v. Jacques, 15 La.Ann. 599, this court had before it the identical question here raised by the intervenor. In that case the collateral heirs of the deceased were seeking to annul an. act of sale made by him on the ground that the vendee was at the time his concubine and that this act of sale, which was in reality a disguised donation, was prohibited by the Code. This court said:
“The position assumed, on the merits, by the defendant’s counsel, is, that none but forced heirs can attack a donation made in violation of Article 1468 [now Article 1481] of the Civil Code; that other legal heirs have no rights but such as are derived from the deceased himself, and that even the forced heirs stand in no better situation beyond their interest in the legitime.
“This is not the case of a simulated sale, but of a prohibited donation made under the form and semblance of a real contract of sale. The transaction was a real one, although the contract was purely gratuitous. * * * The rules applicable to ordinary cases of simulation do not, therefore, apply.
“This contract being derogatory to public order and policy, it is radically null and void, and, as such, is not susceptible of ratification or confirmation. The obligation is an illicit one; it is not reducible or subj ect to rescission: it is an absolute nullity.
“Such being the case, it follows that parties interested — such as the heirs of the deceased, — have a right to set up this nullity, for the purpose of defeating the fraud practiced upon the law. To say that forced •heirs only, and that to the amount of their legitime, are entitled to invoke this nullity, carries its own refutation. For it is tantamount to saying that the illicit obligation is binding in all cases in which the legitime iá not invaded, and that, even when it violates the legitime, it is not null and void, but merely reducible.
“* * * If the donation be set aside,— and, under the law, the whole donation must be declared null, — the property reverts back to the succession, and is transmitted to the legal heir, whether in the direct, or in the collateral line. These have consequently the right to sue for the property ' illegally donated; and, for that purpose, they are allowed to prove the violation of the law by all species of evidence, oral as well as written. To require of them a counter-letter, is to place the law at the mercy of the law-breaker. The object of the latter being to defeat the prohibition, to the detriment of those who are to inherit from him in due course of law, it is evident that in no case these parties would be enabled to produce a counter-letter; and the prohibition would be a dead letter on the statute book. But it is well settled that parol evidence is admissible whenever the obligation is one contracted in fraudem leg-is; and that it is immaterial what form may have been given to the reprobated contract.” (Italics ours.)
*922 To the same effect is the holding of this court in Carmena v. Blaney, 16 La.Ann. 245. See also Gibson v. Dooley, 32 La.Ann. 959, and Succession of Deubler, 144 La. 322, 80 So. 576.
The case of Succession of Haydel, 188 La. 646, 177 So. 695, cited by appellee, is not pertinent or controlling here. By will in that case the decedent bequeathed to his six-year-old adulterine bastard daughter certain immovable property for her support and sustenance. The will was upheld by this court under the authority of Article 1488 of the Civil Code, which provides that natural fathers and mothers cannot dispose of property in favor of their adulterine or incestuous children unless to the mere amount of what is necessary to their sustenance or to procure them an occupation or profession by which to- support themselves. In holding the will to be valid this court pointed out that it was not claimed by the opponent, nor did the facts disclosed by the record show, that the amount of the legacy was excessive for the purpose contemplated by Article 1488. In the -instant case there is nothing in the record to show, nor does the appellee contend, that the disposition of the property to her was a donation for her sustenance or to- procure her an ■occupation or profession by which to support herself.
For the reasons assigned, the judgment ■of the lower court recognizing the intervenor to be the owner of the immovable property in controversy and ordering it stricken from the inventory in the succession proceedings of Rudolph Dupre is annulled, reversed, and set aside, and it is now decreed that the instrument from Rudolph Dupre to Aspz Dupre is a nullity and it is ordered cancelled from the records; the intervention of Mrs. Tommie Dietz is ordered dismissed and her demands rejected; appellee to pay all costs. The right to apply for a rehearing is expressly reserved to appellee, Mrs. Tommie Dietz.
PONDER, J., dissents.